**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| KYLE JUSTICE AND ANNALEAH JUSTICE, ON BEHALF OF THE CLASS OF PERSONS DESIGNATED BY §537.080, ) ) ) ) | |
| Plaintiffs, ) ) | Case No.: 4:22-cv-00050 |
| vs. ) ) | **JURY TRIAL DEMANDED** |
| BESTWAY (USA), INC. and RURAL KING HOLDINGS, LLP, ) ) ) | |
| Defendants. ) | |

**AMENDED COMPLAINT**

Plaintiffs, through their attorneys, TorHoerman Law LLC, allege on personal knowledge as to their own acts and on information and belief based on investigation as to all other allegations against Bestway (USA), Inc. and Rural King Holdings, LLP, as follows:

**PRELIMINARY STATEMENT**

1. This is a wrongful death action arising from the entirely avoidable death of then two-year old E. M. J. (E. M. J. or Decedent), who drowned in a pool designed, manufactured, marketed, advertised, and sold by Defendant Bestway and advertised, marketed, and sold by Defendant Rural King.

2. The design of the pool rendered it defective. The lack of adequate warnings accompanying the pool rendered it defective. Defendants failed in their acts and omissions related to the pool to use reasonable care to avoid injuring E. M. J. and Plaintiffs. Defendants breached implied and express warranties made about the pool. The defective nature of the pool and Defendants' negligent conduct and breach of warranties proximately caused E. M. J.'s horrific suffering and death by drowning and caused Plaintiffs to sustain pecuniary loss, including funeral

expenses and burial expenses for their daughter E. M. J., as well as loss of consortium, companionship, comfort, guidance, and counsel of their daughter E. M. J..

## THE PARTIES

3. Plaintiff Kyle Justice was the father of E. M. J..

4. Plaintiff Annaleah Justice was the mother of E. M. J..

5. Plaintiffs are domiciled in Warren County, Missouri, and are citizens of the state of Missouri.

6. E. M. J. was, at the time of her death at age 2, domiciled in Warren County, Missouri, and was a citizen of the state of Missouri. E. M. J. was a beautiful little girl. She was smart, sassy, and fearless. She loved to sing, dance, and play on YouTube. Ellie loved to sing " Funny Face" and "Rock A Bye Baby." She loved to ride on the ATV and go on mud runs. Some of her favorite things to play with were unicorns and her rocking horse in her room.

7. Defendant Bestway is a citizen of Arizona because it is an Arizona corporation that maintains its principal place of business in Arizona. All acts and omissions of Bestway described in this Complaint were done by its agents, servants, employees, and/or owners acting in the course and scope of their respective agencies, services, employments, and/or ownership. To save a few dollars or cents per unit, Bestway designed, manufactured, and sold a pool that had a nylon ledge barely a foot off the ground that a toddler could use as a step to climb the side of the pool and gain access to the inside of the pool—and drown.

8. Defendant Rural King Holdings, LLP (Rural King) is a citizen of the state of Illinois because its two partners, RK Family, Inc., and Rural King C, Inc., are Illinois corporations that maintain their principal places of business in Illinois. All acts and omissions of Rural King described in this Complaint were done by its agents, servants, employees, and/or owners acting in

the course and scope of their respective agencies, services, employments, and/or ownership. Before the incident giving rise to this action, Rural King installed an exact replica of the pool E. M. J. downed in on its property as a means of advertising and marketing and thus had actual knowledge that the pool had a ledge barely a foot off the ground that a toddler could use as a step to climb the side of the pool and gain access to the inside of the pool—and drown.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000 exclusive of costs and interest.

10. This Court may exercise personal jurisdiction over Bestway because Bestway has minimum contacts with the state of Missouri such that the maintenance of the suit does not offend traditional notions of fair play and substantial. Bestway marketed, promoted, advertised, sold, and distributed the pool in the state of Missouri and put the pool into the stream of commerce knowing that it would enter the state of Missouri and be used therein. Plaintiffs' claims arise out of or relate to Bestway's purposeful contacts with the state of Missouri.

11. This Court may exercise personal jurisdiction over Rural King because Rural King has minimum contacts with the state of Missouri such that the maintenance of the suit does not offend traditional notions of fair play and substantial. Defendant Rural King operates a retail location in Warren County, Missouri, where the pool was sold.  Plaintiffs' claims arise out of or relate to Rural King's purposeful contacts with the state of Missouri.

12. Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTS

13. Bestway designed, manufactured, advertised, distributed, and sold the pool in which E. M. J. downed. The pool was a round, above-ground pool. The height of the pool was 51 inches.

14. The pool had a nylon strap extending around the circumference of the pool. The nylon strap was approximately 14.25 inches off the ground. The nylon strap was not flush against the pool. Nor was it covered. Rather, the nylon strap protruded from the outside of the pool far enough so that a toddler could stand on the nylon strap as a means of climbing the side of the pool to gain entrance into the pool.

15. Bestway sold the pool to Rural King in Warren County, Missouri.

16. Rural King took delivery of the pool in Warren County, Missouri.

17. Rural King constructed the same model of pool E. M. J. downed in on its premises for members of the public to view, as a form of advertisement and marketing of the pool. Thus, Rural King had actual knowledge that the nylon strap created a ledge that was suitable for use as a step a toddler could use to climb up the side of the pool and gain access to the inside of the pool.

18. Rural King sold the pool to E. M. J.'s grandparents in Warren County, Missouri.

19. The pool was installed on the property of E. M. J.'s grandparents located in Warren County, Missouri.

20. The pool was designed to be accompanied by a ladder. The ladder allowed ingress to and egress from the pool. Prior to the incident giving rise to this suit, the ladder was placed eleven feet away from the pool to prevent E. M. J. from gaining access to the inside of the pool and drowning.

21. On August 3, 2019, E. M. J. approached the pool. She was unable to gain access to the inside of the pool via the ladder because, for the safety of E. M. J., the ladder had been placed eleven feet away from the pool.

22. E. M. J. placed her foot on the nylon ledge approximately 14.25 inches off the ground and used the ledge as a step to raise herself up to the top of the edge of the pool.

23. E. M. J. climbed the side of the pool.

24. E. M. J. entered the pool.

25. E. M. J. drowned while in the pool.

26. Despite attempts to save her life, E. M. J. could not be revived.

27. Below are two photographs of the pool taken shortly after the drowning. The first depicts the pool. The second depicts E. M. J.'s tiny muddy footprints on the nylon ledge and on the side of the pool above the nylon ledge showing her path of ingress into the pool.





28. The police report prepared in connection with the drowning reads in part, "I observed several small muddy footprints located on the northwest side of the pool canvas wall supporting the theory [E. M. J.] climbed into the pool before drowning.

29. The detective investigating the drowning death of E. M. J. explained:

> The pool was a 48" above ground pool. The brand of the pool was Bestway Power Steel. The pool was located to the southeast of the residence. The ladder to the pool was located on the ground to the north of the pool and was several feet from the pool. On the northwest side of the pool, I observed mud on a nylon strap that helps secure the pool. The strap was approximately 14 1/4 inches off of the ground. I observed a child size footprint just above the nylon strap. A measurement from the toes to the ground was approximately 19 inches. This foot appeared to be the left foot. Approximately 29 inches from the ground was another footprint. This footprint appeared to be the right footprint. Approximately 36 inches off the ground appeared to be another left footprint. The footprints were left on the outer pool liner by dirt/mud. The prints appeared to be that of a small child and the prints appeared as if the small child was climbing up the side of the pool. On the top rail of the pool, I observed more dirt as if someone was holding onto the top rail. The top rail was 51 inches off the ground.

6

## CAUSES OF ACTION
## COUNT 1
## WRONGFUL DEATH – STRICT LIABILITY DESIGN DEFECT
## AGAINST BESTWAY

30. Plaintiffs incorporate by reference Paragraphs 1-29 of this Complaint.

31. Bestway was in the chain of commence of the pool and sold the pool in the ordinary course of its business.

32. The pool was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use. The pool was defective in design because the nylon strap created a ledge that served as a step and enabled E. M. J. to climb into the pool without a ladder. The ledge should not have been created. The nylon band should have been flat against the side of the pool so it could not be used as a step to gain access to the inside of the pool.  Alternatively, or in addition, the ledge should have been higher off the ground so that a toddler could not use the ledge as a step to climb the side of the pool to gain access to the inside of the pool. Alternatively, or in addition, the ledge should have been covered such that a toddler could not use the ledge as a step to gain access to the inside of the pool. Alternatively, or in addition, the ledge should have been wider from top to bottom such that a toddler could not use the ledge as a step to gain access to the inside of the pool.

33. The pool was used in a manner that was reasonably anticipated by Bestway. That is, the pool was set up and filled water for the purpose of aquatic recreation.  As such, Bestway did or should have reasonably anticipated that a toddler would attempt to gain entrance to the pool by using the ledge as a step to climb the side of the pool.

34. As a direct, foreseeable, and proximate result of the design of the pool, E. M. J. suffered an excruciating death by drowning.

7

35. As a direct, foreseeable, and proximate result of the design of the pool, Plaintiffs suffered pecuniary losses, including funeral expenses and burial expense, as well as loss of consortium, companionship, comfort, guidance, and counsel of E. M. J..

36. Bestway designed the pool in the manner that created a nylon ledge barely one foot off the ground to save the few dollars or cents per unit it would have taken the render the pool reasonably safe. In so doing, Bestway showed complete indifference to or conscious disregard for the safety of others and engaged in conduct that was so egregious that it was tantamount to intentional wrongdoing because the natural and probable consequence of the conduct is death of a toddler by drowning. Therefore, Plaintiffs are entitled to exemplary damages for aggravating circumstances

**COUNT 2**
**WRONGFUL DEATH – STRICT LIABILITY FAILURE TO WARN**
**AGAINST BESTWAY**

37. Plaintiffs incorporate by reference Paragraphs 1-29 of this Complaint.

38. Bestway was in the chain of commence of the pool and sold the pool in the ordinary course of its business.

39. The pool was unreasonably dangerous at the time of sale when used as reasonably anticipated without knowledge of its characteristics. That is, the pool was unreasonably dangerous because the nylon strap created a ledge that served as a step and enabled toddlers, including E. M. J., to climb into the pool without a ladder.

40. Bestway did not give adequate warning of the danger. That is, Bestway failed to warn that the nylon strap created a ledge that served as a step and enabled toddlers, including E. M. J., to climb into the pool without a ladder.

41. The pool was used in a manner that was reasonably anticipated by Bestway. That is, the pool was set up and filled water for the purpose of aquatic recreation. As such, Bestway did or should have reasonably anticipated that a toddler would attempt to gain entrance to the pool by using the ledge as a step to climb the side of the pool.

42. As a direct, foreseeable, and proximate result of the inadequate warnings, E. M. J. suffered an excruciating death by drowning.

43. As a direct, foreseeable, and proximate result of the inadequate warnings, Plaintiffs suffered pecuniary losses, including funeral expenses and burial expense, as well as loss of consortium, companionship, comfort, guidance, and counsel of E. M. J..

44. Bestway failed to warn that it designed and manufactured the pool in the manner that created a nylon ledge barely one foot off the ground to save the few dollars or cents per unit it would have taken the render the pool reasonably safe. Bestway then failed to warn foreseeable users of this defect. In so doing, Bestway showed complete indifference to or conscious disregard for the safety of others and engaged in conduct that was so egregious that it was tantamount to intentional wrongdoing because the natural and probable consequence of the conduct is death of a toddler by drowning. Therefore, Plaintiffs are entitled to exemplary damages for aggravating circumstances

## COUNT 3
## WRONGFUL DEATH – NEGLIGENCE
## AGAINST BESTWAY

45. Plaintiffs incorporate by reference Paragraphs 1-29 of this Complaint.

46. At all times material hereto, Bestway had a duty to foreseeable users of the pool, including E. M. J., to exercise reasonable care in the design, manufacture, testing, inspection, advertising, marketing, distribution, and sale of the pool.

9

47. Bestway had a further duty to provide adequate and sufficient instructions concerning the proper use of the pool, as well as warnings of the risks and dangers associated with using the pool, to E. M. J.'s parents and grandparents and to other foreseeable users of the pool.

48. Bestway negligently designed the pool so that the nylon strap created a ledge that a toddler could use to climb the side of the pool and gain access to the inside of the pool.

49. Bestway negligently designed the pool in violation of industry standards that prohibit the creation of protrusions on the side of the pool that form footholds.

50. Bestway negligently failed to warn that the nylon strap created a ledge that a toddler could use to climb the side of the pool and gain access to the inside of the pool.

51. As a direct, foreseeable, and proximate result of Bestway's negligence, E. M. J. suffered an excruciating death by drowning.

52. As a direct, foreseeable, and proximate result of Bestway's negligence, Plaintiffs suffered pecuniary losses, including funeral expenses and burial expense, as well as loss of consortium, companionship, comfort, guidance, and counsel of E. M. J..

53. Bestway acted in a negligent manner simply to save the few dollars or cents per unit it would have taken to render the pool reasonably safe by avoiding creating a step barely one foot off the ground and by failing to warn that the nylon strap created a ledge that a toddler could use to gain access to the inside of the pool. In so doing, Bestway showed complete indifference to or conscious disregard for the safety of others, including E. M. J., and engaged in conduct that was so egregious that it was tantamount to intentional wrongdoing because the natural and probable consequence of the conduct was death of a toddler by drowning. Therefore, Plaintiffs are entitled to exemplary damages for aggravating circumstances.

## COUNT 4
## WRONGFUL DEATH – BREACH OF EXPRESS WARRANTY
## AGAINST BESTWAY

54. Plaintiffs incorporate by reference Paragraphs 1-29 of this Complaint.

55. Bestway sold the pool to Rural King, which then sold the pool to E. M. J.'s grandparents.

56. Bestway warranted: THIS PRODUCT IS COMPLIANT TO ANSI/ APSP 4 AMERICAN NATIONAL STANDARD FOR ABOVEGROUND POOLS / ONGROUND RESIDENTIAL SWIMMING POOLS & INTERNATIONAL SWIMMING POOL & SPA CODE (ISPSC)"

57. This statement was a fact that was a material factor inducing E. M. J.'s grandparents to purchase the pool.

58. The pool did not conform to this statement of fact because, in violation of the referenced industry standards, the outside wall of the pool had protrusions that formed footholds that could be used by a toddler as a means of climbing the side of the pool and entering the pool.

59. As a direct, foreseeable, and proximate result of the nonconformity to the warranty, E. M. J. suffered an excruciating death by drowning.

60. As a direct, foreseeable, and proximate result of the nonconformity to the warranty, Plaintiffs suffered pecuniary losses, including funeral expenses and burial expense, as well as loss of consortium, companionship, comfort, guidance, and counsel of E. M. J..

61. Plaintiffs, through counsel, timely notified Bestway of the breach of warranty within a reasonable time after discovery the nonconformity by sending a letter to Bestway dated July 7, 2021, describing the drowning incident.

62. Bestway, by warranting that the pool was compliant with the referenced industry standards while knowing the side of the pool included protrusions that could be used as footholds, showed complete indifference to or conscious disregard for the safety of others and engaged in conduct that was so egregious that it was tantamount to intentional wrongdoing because the natural and probable consequence of the conduct is death of a toddler by drowning. Therefore, Plaintiffs are entitled to exemplary damages for aggravating circumstances.

## COUNT 5
## WRONGFUL DEATH – BREACH OF IMPLIED WARRANTY AGAINST BESTWAY

63. Plaintiffs incorporate by reference Paragraphs 1-29 of this Complaint.

64. Bestway sold the pool to Rural King, which then sold the pool to E. M. J.'s grandparents.

65. The pool was not merchantable at the time of the sales because the nylon strap created a ledge that served as a step and enabled E. M. J. to climb into the pool without a ladder and did not contain any warning that the nylon strap created a ledge that served as a step.

66. As a direct, foreseeable, and proximate result of the nonconformity to the warranty, E. M. J. suffered an excruciating death by drowning.

67. As a direct, foreseeable, and proximate result of the nonconformity to the warranty, Plaintiffs suffered pecuniary losses, including funeral expenses and burial expense, as well as loss of consortium, companionship, comfort, guidance, and counsel of E. M. J..

68. Plaintiffs, through counsel, timely notified Bestway of the breach of warranty within a reasonable time after discovery the nonconformity by sending a letter to Bestway dated July 7, 2021, describing the drowning incident.

69. Bestway, by warranting that the pool was merchantable while knowing the side of the pool included protrusions that could be used at footholds, showed complete indifference to or conscious disregard for the safety of others and engaged in conduct that was so egregious that it was tantamount to intentional wrongdoing because the natural and probable consequence of the conduct is death of a toddler by drowning. Therefore, Plaintiffs are entitled to exemplary damages for aggravating circumstances

## COUNT 6
## WRONGFUL DEATH – NEGLIGENCE
## AGAINST RURAL KING

70. Plaintiffs incorporate by reference Paragraphs 1-29 of this Complaint.

71. At all times material hereto, Rural King had a duty to foreseeable users of the pool, including E. M. J., to exercise reasonable care in the inspection, advertising, marketing, distribution, and sale of the pool.

72. Rural King had a further duty to provide adequate and sufficient instructions concerning the proper use of the pool, as well as warnings of the risks and dangers associated with using the pool, to E. M. J.'s parents and grandparents and to other foreseeable users of the pool.

73. Rural King constructed the same model of pool E. M. J. downed in on its premises for members of the public to view, as a form of advertisement and marketing of the pool. Thus, Rural King had actual knowledge that the nylon strap created a ledge that was suitable for use as a step a toddler could use to scale up the side of the pool and gain access to the inside of the pool.

74. Rural negligently failed to warn that the nylon strap created a ledge that a toddler could use to climb the side of the pool and gain access to the inside of the pool.

75. As a direct, foreseeable, and proximate result of Rural King's negligence, E. M. J. suffered an excruciating death by drowning.

76. As a direct, foreseeable, and proximate result of Rural King's negligence, Plaintiffs suffered pecuniary losses, including funeral expenses and burial expense, as well as loss of consortium, companionship, comfort, guidance, and counsel of E. M. J..

77. Rural King had actual knowledge of the dangerous defect in the pool yet failed to warn about that defect and associated risk of death. In so doing, Rural King showed complete indifference to or conscious disregard for the safety of others, including E. M. J., and engaged in conduct that was so egregious that it was tantamount to intentional wrongdoing because the natural and probable consequence of the conduct was death of a toddler by drowning. Therefore, Plaintiffs are entitled to exemplary damages for aggravating circumstances.

## COUNT 7
## WRONGFUL DEATH – BREACH OF EXPRESS WARRANTY AGAINST RURAL KING

78. Plaintiffs incorporate by reference Paragraphs 1-29 of this Complaint.

79. Rural King sold the pool to E. M. J.'s grandparents.

80. Rural King warranted: THIS PRODUCT IS COMPLIANT TO ANSI/ APSP 4 AMERICAN NATIONAL STANDARD FOR ABOVEGROUND POOLS / ONGROUND RESIDENTIAL SWIMMING POOLS & INTERNATIONAL SWIMMING POOL & SPA CODE (ISPSC)"

81. This statement was a fact that was a material factor inducing E. M. J.'s grandparents to purchase the pool.

82. The pool did not conform to this statement of fact because, in violation of the referenced industry standards, the outside wall of the pool had protrusions that formed footholds that could be used by a toddler as a means of climbing the side of the pool and entering the pool.

83. As a direct, foreseeable, and proximate result of the nonconformity to the warranty, E. M. J. suffered an excruciating death by drowning.

84. As a direct, foreseeable, and proximate result of the nonconformity to the warranty, Plaintiffs suffered pecuniary losses, including funeral expenses and burial expense, as well as loss of consortium, companionship, comfort, guidance, and counsel of E. M. J..

85. Plaintiffs, through counsel, timely notified Rural King of the breach of warranty within a reasonable time after discovering the nonconformity by sending a letter to Rural King dated July 7, 2021, describing the drowning incident.

86. Rural King, by warranting that the pool was compliant with the referenced industry standards while knowing the side of the pool included protrusions that could be used at footholds, showed complete indifference to or conscious disregard for the safety of others and engaged in conduct that was so egregious that it was tantamount to intentional wrongdoing because the natural and probable consequence of the conduct is death of a toddler by drowning. Therefore, Plaintiffs are entitled to exemplary damages for aggravating circumstances.

## COUNT 8
## WRONGFUL DEATH – BREACH OF IMPLIED WARRANTY
## AGAINST RURAL KING

87. Plaintiffs incorporate by reference Paragraphs 1-29 of this Complaint.

88. Rural King sold the pool to E. M. J.'s grandparents.

89. The pool was not merchantable at the time of the sales because the nylon strap created a ledge that served as a step and enabled E. M. J. to climb into the pool without a ladder and did not contain any warning that the nylon strap created a ledge that served as a step.

90. As a direct, foreseeable, and proximate result of the nonconformity to the warranty, E. M. J. suffered an excruciating death by drowning.

91. As a direct, foreseeable, and proximate result of the nonconformity to the warranty, Plaintiffs suffered pecuniary losses, including funeral expenses and burial expense, as well as loss of consortium, companionship, comfort, guidance, and counsel of E. M. J..

92. Plaintiffs, through counsel, timely notified Rural King of the breach of warranty within a reasonable time after discovery the nonconformity by sending a letter to Bestway dated July 7, 2021, describing the drowning incident.

93. Rural King, by warranting that the pool was merchantable while knowing the side of the pool included protrusions that could be used at footholds and not warning that the protrusion could be used a step go get into the pool, showed complete indifference to or conscious disregard for the safety of others and engaged in conduct that was so egregious that it was tantamount to intentional wrongdoing because the natural and probable consequence of the conduct is death of a toddler by drowning. Therefore, Plaintiffs are entitled to exemplary damages for aggravating circumstances.

**COUNT 9**
**WRONGFUL DEATH – STRICT LIABILITY**
**AGAINST RURAL KING**

94. Plaintiffs incorporate by reference Paragraphs 1-29 and Counts I and II of this Complaint.

95. Rural King was in the business of selling pools.

96. Rural King sold the pool to E. M. J.'s grandparents.

97. At the time of sale, the pool was in a defective condition uneasonably dangerous to the user as set forth in Counts I and II of this Complaint.

98. The pool was expected to and did reach the user or consumer without substantial change in the condition in which it is sold.

99. The pool was used in a manner that was reasonably anticipated by Rural King. That is, the pool was set up and filled water for the purpose of aquatic recreation. As such, Rural King did or should have reasonably anticipated that a toddler would attempt to gain entrance to the pool by using the ledge as a step to climb the side of the pool.

100. As a direct, foreseeable, and proximate result of the defective and unreasonably dangerous condition of the pool, E. M. J. suffered an excruciating death by drowning.

101. As a direct, foreseeable, and proximate result of the defective and unreasonably dangerous condition, Plaintiffs suffered pecuniary losses, including funeral expenses and burial expense, as well as loss of consortium, companionship, comfort, guidance, and counsel of E. M. J.

## PRAYER FOR RELIEF

Plaintiffs pray this Court enter an award for compensatory damages for Decedent's excruciating suffering preceding her death by drowning and for Plaintiffs' pecuniary losses, including funeral expenses and burial expense, as well as loss of consortium, companionship, comfort, guidance, and counsel of E. M. J., for exemplary damages for aggravating circumstances, and for such further relief as is proper.

Dated: January 18, 2022                                 Respectfully submitted,

*/s/Eric M. Terry*
**TORHOERMAN LAW LLC**
Eric M. Terry, # 57102MO
Kenneth J. Brennan, # 47523MO
Tyler J. Schneider, # 67243MO
210 South Main Street
Edwardsville, IL 62025
Telephone: (618) 656-4400
eric@thlawyer.com
kbrennan@thlawyer.com
tyler@thlawyer.com
**Attorneys for Plaintiffs**

17

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby requests a trial by jury of all issues triable by jury.

Dated: January 18, 2022  **Respectfully submitted,**
**TorHoerman Law LLC**

*/s/Eric M. Terry*
**TorHoerman Law LLC**
Eric M. Terry, # 57102MO
Kenneth J. Brennan, # 47523MO
Tyler J. Schneider, # 67243MO
210 South Main Street
Edwardsville, IL 62025
Telephone: (618) 656-4400
eric@thlawyer.com
kbrennan@thlawyer.com
tyler@thlawyer.com

**Attorneys for Plaintiffs**