# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| KYLE JUSTICE and ANNALEAH JUSTICE, ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | No. 4:22-cv-00050-AGF |
| BESTWAY (USA), INC., and RURAL KING HOLDINGS, LLP, ) ) ) | |
| Defendants, ) ) | |
| and ) ) | |
| BESTWAY (USA), INC., ) ) | |
| Third-Party Plaintiff, ) ) | |
| v. ) ) | |
| MARY FLAKE and PATRICK FLAKE, ) ) | |
| Third-Party Defendants, ) ) | |
| and ) ) | |
| RURAL KING HOLDINGS, LLP, ) ) | |
| Cross Claimant, ) ) | |
| v. ) ) | |
| MARY FLAKE and PATRICK FLAKE, ) ) | |
| Cross Defendants, ) ) | |
| and ) ) | |

| | |
|---|---|
| RURAL KING HOLDINGS, LLP, | ) |
| | ) |
|     Third-Party Plaintiff, | ) |
| | ) |
|   v. | ) |
| | ) |
| BESTWAY (HONG KONG) INTERNATIONAL LIMITED and BESTWAY INFLATABLES & MATERIALS CORPORATION, | ) ) ) ) |
| | ) |
|     Third-Party Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs Kyle and Annaleah Justice's motion to exclude Fred Semke, Defendant Bestway (USA), Inc.'s retained engineering expert. ECF No. 118. Bestway USA filed a response. ECF No. 132. Plaintiffs filed a reply. ECF No. 147. The Motion is now fully briefed and ripe for disposition. For the reasons set forth below, the Court will grant in part and deny in part Plaintiffs' Motion.

## Background

This case involves claims raised by Plaintiffs Kyle and Annaleah Justice against Defendants Bestway USA and Rural King Holdings, Inc. under the Missouri Wrongful Death Statute, Mo. Rev. Stat. § 537.080. Plaintiffs' claims arose from the drowning death of their minor daughter, E.M.J., in an above-ground pool on August 3, 2019. Plaintiffs raised five claims against Bestway USA: Count I – Strict Liability Design Defect; Count II – Strict Liability Failure to Warn; Count III – Negligence (under theories of both negligent design and negligent failure to warn); Count IV – Breach of Express Warranty; and Count V – Breach of Implied Warranty. ECF No. 5.

2

On July 26, 2024, Bestway USA filed its motion for summary judgment.  ECF No. 128.  Bestway USA sought summary judgment in its favor as to all of Plaintiffs' claims raised against it.  On October 22, 2024, the Court issued its Memorandum and Order on Bestway USA's motion for summary judgment, granting summary judgment in Bestway USA's favor as to Counts III, IV, and V.  ECF No. 157.  The Court also found that Plaintiffs were unable to carry their burden to establish that they were entitled to punitive damages and will preclude Plaintiffs from seeking punitive damages against Bestway USA at trial.  Therefore, the only issues that remain for trial between Plaintiffs and Bestway USA are those raised under Plaintiffs' theories of strict liability design defect under Count I and strict liability failure to warn under Count II.

Mr. Semke is President of Semke Forensic and was hired by Bestway USA to "render professional opinions regarding the pool."  ECF No. 118-1 at 1.  Mr. Semke has a bachelor's degree in mechanical engineering and a master's degree in engineering mechanics.  ECF No. 132-1 at 1.  He is a Registered Professional Engineer in Missouri, Illinois, Arkansas, Kentucky, Kansas, Oklahoma, Iowa, Alabama, and Idaho.  *Id.* at 4.  He also has fourteen (14) years of experience as a structural engineer.  ECF No. 118-2 at 185:18–20.

Mr. Semke's report states that he plans to testify to the following:

1. During the Warren County Sheriff's evaluation of the subject pool, the top of the support band was measured at 14.5 inches from the ground . . . with the overall height of the pool being 51.5 inches . . . . As such, the distance between the top of the pool and the top of the support band was 37 inches.

3

2. Mr. Kyle Justice testified [E.M.J.] "…couldn't climb up into that tree house… because the ladder rungs were too tall." The ladder rungs were measured by Semke and found to be 25 inches from the base of the ladder . . . . Furthermore, Mrs. Flake relayed to Semke during the inspection of the premises that [E.M.J.] was unable to climb onto the family's 34-inch high trampoline . . . without assistance.

3. Considering the aforementioned statements made by Mr. Justice and Mrs. Flake, in conjunction with the measured heights, it was inconsistent with [E.M.J.] using the pool support band as a stepping location to pull herself into the pool.

4. The design of the subject pool was not unique; rather, it was consistent with other polyvinyl chloride pools. The subject pool, and similar pools, require the support band near the bottom of the pool to resist the hydrostatic pressure at the base of the wall. In addition, the band also serves as a support for the vertical posts of the pool frame.

5. Based on the indicated analysis, the pool did not contain design or manufacturing deficiencies.

ECF No. 118-1 at 6.

Plaintiffs argue that Mr. Semke's testimony should be excluded because (1) he is not qualified to provide opinions regarding pool engineering; (2) Opinions 1, 2, and 3 are mere statements of fact or simple inference that do not require expert testimony; (3) Opinion 4 is not based on sufficient facts or data; and (4) Opinion 5 is a legal opinion. Plaintiffs separately argue that several opinions Mr. Semke testified to during his deposition were not disclosed in his expert report and should therefore be excluded.

Plaintiffs challenge Mr. Semke's qualifications to testify regarding pool design. Specifically, Plaintiffs argue that Mr. Semke lacks experience or training specifically related to biomechanical engineering, human factors analysis, and above-ground pool design. Plaintiffs point to portions of Mr. Semke's deposition testimony where he

4

admitted that he did not conduct a specific evaluation of the pool, did not review any peer-reviewed studies regarding human factors, did not independently review the American National Standard Institute's ("ANSI") standards regarding above-ground pools, did not set up the pool himself, did not have knowledge of how the pool came to consumers, and did not conduct any testing regarding the climbability of the nylon support strap. Plaintiffs argue that, taken together, these admissions show that Mr. Semke is not qualified to testify regarding pool engineering or the pool's design.

Plaintiffs argue that Mr. Semke's Opinions 1, 2, and 3 should be excluded because they are statements of fact and not expert opinions. Plaintiffs contend that Mr. Semke's statements about the height of the pool wall, the nylon strap, and the distance between them are facts that the jury does not need expert testimony to understand. Similarly, Plaintiffs assert that Opinion 2 is a restatement of Plaintiff Kyle Justice's and Third-Party Defendant Mary Flake's deposition testimony and therefore is improper opinion testimony. As to Opinion 3, Plaintiffs argue that the jury itself can make the same inference and no expert testimony is required to establish such an inference.

Plaintiffs aver that Opinion 4—specifically that the pool's design was not unique—is not based on sufficient facts or data because Mr. Semke testified that he has not evaluated any other pool designs. Plaintiffs argue that Mr. Semke's lack of experience with pool engineering prevents him from forming a conclusion about the pool's design or how it compares to the design of other pools. Plaintiffs further contend that Mr. Semke should not be permitted to testify that the pool "required" the nylon support strap because he did not investigate or evaluate any pools with alternative

5

designs. Plaintiffs argue that, at most, Mr. Semke's testimony should be limited to saying that the nylon support strap "served to" resist the hydrostatic pressure of the water against the pool walls rather than was "required" to resist such pressure.

Regarding Opinion 5, Plaintiffs represent that it is merely a legal conclusion and therefore should be excluded. Though Plaintiffs recognize that the opinion does not specifically state that the pool design was not "defective," they argue that the opinion that the pool "did not contain design or manufacturing *deficiencies*" is a thinly veiled attempt to provide a legal conclusion regarding the pool's alleged design defect. In support, Plaintiffs cite to several opinions out of this Court and the Eighth Circuit stating that expert testimony cannot be couched in legal terms of art. Plaintiffs cite to a case out of the District of Colorado where the court held that "defect" is synonymous with "deficiency," though the district court was considering the words in the context of statutory interpretation and not in the area of admissibility of expert testimony. *See MIC Comms. Servs., Inc. v. B&F Co.*, No. 19-cv-01546, 2020 WL 3971641, at *4–7 (D. Colo. July 13, 2020). Plaintiffs again attack Mr. Semke's purported lack of qualifications and experience with pool engineering, which they contend prevents Mr. Semke from testifying regarding the pool's allegedly defective design. Plaintiffs take particular issue with Mr. Semke's admission that he did not review the ANSI standards regarding above-ground pools, stating that he cannot possibly state whether the pool's design was defective without reviewing those standards.

Plaintiffs also oppose the admission of several opinions Mr. Semke only expressed during his deposition testimony and were not included in his expert report. These include

6

Mr. Semke's opinions that: (1) E.M.J. was not adequately supervised at the time of her drowning; (2) E.M.J. could have used a bucket to enter the pool; (3) E.M.J. could have used the pool ladder to enter the pool; (4) E.M.J. could have climbed the pool's support poles to enter the pool.  Plaintiffs argue that because these opinions were only raised at deposition and were not shared in Mr. Semke's expert report, as required by Federal Rule of Civil Procedure 26, they are inadmissible.

Bestway USA opposes the exclusion of Mr. Semke's opinions.  Bestway USA argues that Mr. Semke's decades of experience in the field of mechanical engineering qualify him to testify about the pool's design.  Bestway USA contends that Plaintiffs are incorrect to suggest that Mr. Semke must be specifically qualified in the field of aquatic engineering to testify as to the engineering issues in this case.  Bestway USA further points out that, using Plaintiffs' logic, at least one of their retained experts, Peggy Shibata, would similarly be unqualified to provide opinions about the pool's design because she too lacks experience in the field of aquatic engineering.

Next, Bestway USA explains that Mr. Semke's first three opinions are meant to be read together and ultimately are opinions about E.M.J.'s ability (or lack thereof) to climb the pool wall using the nylon support strap.  Bestway USA emphasizes that Mr. Semke's assistant visited the Flake's property to take its measurements to establish the property's scale.  Bestway USA argues that Mr. Semke's analysis of the measurements and their application to this case required the use of his engineering knowledge and will help the jury determine whether E.M.J. could have used the nylon support strap to enter to pool.

7

Bestway USA further asserts that Mr. Semke's opinion about the pool's lack of design or manufacturing deficiencies is not a legal conclusion.  Bestway USA also argues that Mr. Semke was specifically hired to assess the design of the pool on the Flake's property, so his testimony that he did not assess other pool designs is not surprising nor should it undermine his opinions.  Bestway USA emphasizes that Mr. Semke's testimony will help the jury to assess what purpose the nylon support strap had in the pool's design and whether it could have been used as a foothold.  Bestway USA further argues that Plaintiffs' focus on the word "required" in Mr. Semke's opinion mischaracterizes the purpose of his opinion, which is simply to state why such a support strap is needed for a pool of this design.

Regarding the additional opinions Mr. Semke expressed in his deposition but did not include in his expert report, Bestway USA says that these opinions are not inadmissible because they were in response to direct questions posed by Plaintiffs' and Third-party Defendants' attorneys.  Bestway USA argues that Plaintiffs' attorney's questions opened the door to these additional, undisclosed opinions and that these opinions are nevertheless reliable and admissible.

Plaintiffs' reply counters only one specific argument raised in Bestway USA's response and otherwise repeats the same arguments raised in the Motion.  Plaintiffs contend that Bestway USA's argument that Mr. Semke's undisclosed opinions were only provided because Plaintiffs opened the door cannot succeed because "opening the door" requires the introduction of evidence.  In Plaintiffs' view, questions at a deposition are not evidence and therefore cannot open to the door to undisclosed expert opinions.

8

**Legal Standard**

The admission of expert testimony in this Court is governed by Federal Rule of Evidence 702, which provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

The rule was amended in 2000 in response to *Daubert v. Merrell Dow Pharms., Inc.*, which charged trial judges with a "gatekeeping" role to screen expert testimony for relevance and reliability. 509 U.S. 579, 590–93 (1993); *see also Russell v. Whirlpool Corp.*, 702 F.3d 450, 456 (8th Cir. 2012). "To satisfy the relevance requirement, the proponent must show that the expert's reasoning or methodology was applied properly to the facts at issue." *Barrett v. Rhodia, Inc.*, 606 F.3d 975, 980 (8th Cir. 2010) (citation omitted). "To satisfy the reliability requirement, the party offering the expert testimony 'must show by a preponderance of the evidence both that the expert is qualified to render the opinion and that the methodology underlying his conclusions is scientifically valid.'" *Id.* (quoting *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006)); *see also In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (3d Cir. 1994) ("[A]n expert's

9

testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable.") (citing *Daubert*, 509 U.S. at 589).

In the most recent amendment to Rule 702, made effective on December 1, 2023,[1] the advisory committee's note clarifies the Court's initial gatekeeping function and emphasizes that proponents of expert testimony must establish admissibility of the proffered evidence by a preponderance of the evidence.[2]  Fed. R. Evid. 702 advisory committee's note to 2023 amendment; *see also Word v. Mine Safety Appliances Co.*, No. 5:14-CV-00445-BRW, 2016 WL 3034045, at *2 (E.D. Ark. Mar. 25, 2016) (stating "[w]hen a party proffers an expert witness, deciding whether Rule 702 is satisfied is a preliminary issue governed by Federal Rule of Evidence 104(a)[, which] requires the proponent of evidence to establish its admissibility by a preponderance of the evidence."); *United States v. Martinez*, 3 F.3d 1191, 1196 (8th Cir. 1993) ("Before admitting scientific expert testimony, the court must conclude, pursuant to Federal Rule of Evidence 104(a) that the proposed testimony constitutes (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue.") (citing *Daubert*, 509 U.S. at 592) (footnote omitted).  "The preponderance standard ensures that

---

[1]     The advisory committee's note clarifies that this amendment does not impose any new, specific procedures, but instead "is simply intended to clarify that Rule 104(a)'s requirement applies to expert opinions under Rule 702."  Fed. R. Evid. 702 advisory committee's note to 2023 amendment.

[2]     The advisory committee's note also states that "many courts have held that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility.  These rulings are an incorrect application of Rules 702 and 104(a)."  Fed. R. Evid. 702 advisory committee's note to 2023 amendment.

before admitting evidence, the court will have found it more likely than not that the technical issues and policy concerns addressed by the Federal Rules of Evidence have been afforded due consideration." *Bourjaily v. United States*, 483 U.S. 171, 175 (1987).

"The inquiry envisioned by Rule 702 is a flexible one," designed to exclude "vague theorizing based on general principles" or "unsupported speculation," but not requiring an opinion to be "a scientific absolute in order to be admissible." *Adams v. Toyota Motor Corp.*, 867 F.3d 903, 914–16 (8th Cir. 2017) (cleaned up); *see also Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141–42 (1999) ("[T]he test of reliability is 'flexible,' and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case.  Rather, the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability opinion."); *Unrein v. Timesavers, Inc.*, 394 F.3d 1008, 1011 (8th Cir. 2005) (stating that the "evidentiary inquiry is meant to be flexible and fact specific, and a court should use, adapt, or reject *Daubert* factors as the particular case demands.") (citation omitted).  Further, Rule 702(d) has been amended to emphasize that the reliability analysis applies to each opinion offered.  Fed. R. Evid. 702 advisory committee's note to 2023 amendment.

## Discussion

Mr. Semke is Qualified to Express Opinions Regarding the Pool's Design

Mr. Semke, an experienced engineer with degrees in mechanical engineering and engineering mechanics, is qualified to testify in the field of engineering.  This includes testimony regarding the engineering implications of the pool's design and the function of

11

the pool's nylon support strap. Mr. Semke is not required to have further specialization in aquatic engineering to offer these opinions; it is sufficient that he has expertise in engineering and structural design. *VanDine v. Summit Treestands, LLC*, Civil Action No. 23-0027, 2024 WL 3160326, at *2, ___ F. Supp. 3d ___ (E.D. Pa. June 25, 2024) ("[T]he specialized-knowledge requirement [under Rule 702] is interpreted liberally and a broad range of knowledge, skills, and training qualify an expert as such.") (cleaned up) (citing *In re Paoli*, 35 F.3d at 741). Despite not having specific experience in evaluating pool designs or in designing pools, Mr. Semke can offer his engineering knowledge and experience to help the jury understand the engineering concepts underlying the pool's design.

Opinions 1, 2, and 3

Mr. Semke's Opinions 1, 2, and 3 are statements of fact and/or simple inferences that do not require expert testimony. *See Lee v. Andersen*, 616 F.3d 803, 809 (8th Cir. 2010) ("If the subject matter [of the expert's testimony] is within the jury's knowledge or experience, . . . the expert testimony remains subject to exclusion because the testimony does not then meet the helpfulness criterion of Rule 702.") (internal quotations and citation omitted). Specifically, the simple math and the previous testimony of Kyle Justice and Mary Flake are mere statements of fact that can be established without reliance on opinion evidence. To be clear, Mr. Semke will be permitted to testify regarding the measurements his firm took at the Flake residence and to explain the process he used to arrive at some of his conclusions, but the jury does not need his assistance to determine the difference between 51.5" and 14.5".

Similarly, no expertise is necessary for the jury to understand the lay testimony of Kyle Justice and Mary Flake. The jury itself can make its own inferences regarding whether E.M.J. was able to scale the pool wall based on testimony regarding its height and her known climbing abilities. Mr. Semke's opinion testimony that the theory that E.M.J. accessed the pool by standing on the nylon support strap is inconsistent with her family's testimony about her climbing abilities is simply an inference that the jury can arrive it through its own knowledge and experience. And if expert testimony could help to jury on this issue, it is not appropriate testimony for an expert with engineering expertise. Indeed, Mr. Semke does not appear to be relying on his engineering expertise in rendering the opinion. His opinion will therefore be excluded.[3]

Opinion 4

Mr. Semke will be permitted to testify regarding the purpose of the pool's nylon support strap in its design. Mr. Semke's testified at deposition that the pool's nylon support strap is a "structural item" used to ensure the structural integrity of the pool's walls, which are pushed outward by the weight of the water in the pool when the pool is filled. ECF No. 132-2 at 133:20–134:5. He will also be permitted to testify regarding the effect the pressure on the structure would have on the potential gap between the nylon support strap and the pool's exterior wall, and therefore its utility as a foothold. Mr. Semke arrived at these conclusions using his engineering expertise. *Id.* at 134:23–24.

---

[3]  The Court expresses no opinion at this time regarding Plaintiffs' argument that Kyle Justice's and Mary Flake's statements regarding E.M.J.'s ability to climb the ladder or as to the trampoline are inadmissible hearsay.

This is appropriate opinion testimony for an expert with Mr. Semke's education and experience, and the Court will not exclude it.  To the extent that Plaintiffs disagree with Mr. Semke's opinion that the nylon support strap is "required," they will have an opportunity to cross-examine Mr. Semke about his intended meaning if he testifies at trial.

However, Mr. Semke will be precluded from testifying that the design of the pool was "not unique" and "was consistent with other polyvinyl chloride pools."  By his own admission, Mr. Semke was not asked to evaluate any other pool designs and he did not do so.  *Id.* at 139:20–141:18.  As such, this portion of Mr. Semke's Opinion 4 was not based on sufficient facts or data, and this testimony will therefore be excluded.

Opinion 5

The Court will permit Mr. Semke to opine that, based on his analysis, the subject pool with the nylon support strap does not constitute a design deficiency.  Experts are generally precluded from expressing legal conclusions and/or couching their testimony in legal terms of art.  *Wegmann v. Ethicon, Inc.*, No. 4:20-CV-704-JAR, 2020 WL 5814475, at *5 (E.D. Mo. Sept. 30, 2020) ("[O]pinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible.") (quoting *United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006)).  However, an expert's testimony can embrace ultimate issues in the case.  Fed. R. Evid. 704(a); *see also Alumbaugh v. Union Pac. R.R.*, 322 F.3d 520, 525 (8th Cir. 2003) (citing Fed. R. Evid. 704(a) in finding that district courted erred when it excluded an expert's opinions that the railroad crossing at issue in the case was in a state of disrepair "because its components . .

14

. were not maintained properly and were badly deteriorated."); *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liab. Litig.*, No. M21-88, 2008 WL 1971538, at *14 (S.D.N.Y. May 7, 2008) ("In product liability cases, courts have generally admitted expert opinions embracing ultimate issues such as causation, product defect, or whether warnings were required if the expert opinions satisfied Rules 402 and 702."). When evaluating the entirety of Mr. Semke's opinions and analysis, the Court finds that this opinion is admissible.

Mr. Semke is qualified to testify regarding the pool's design, and his testimony here regarding the lack of deficiencies in the pool's design does not present a legal conclusion. Mr. Semke does not propose to apply the law to the facts of this case in arriving at his conclusion. Plaintiffs themselves admit as much. ECF No. 118 at 10 ("Semke independently reviewed no industry standards or guidelines."). Rather, his opinion that the pool contains no design deficiencies is an engineering opinion stemming from his analysis of the pool's design. Despite what Plaintiffs claim, this opinion does not require Mr. Semke to have evaluated the designs of other pools because this opinion pertains only to the pool at issue in this case, and Plaintiffs can certainly cross-examine him in this regard. He is not attempting to tell the jury what legal conclusion to reach but is instead stating that there are no specific engineering issues inherent in the pool's design.[4] This is permissible expert testimony that will help the jury to determine whether

---

[4] The Court also notes that Plaintiffs' arguments that Mr. Semke's opinions here should be excluded as an improper legal opinion appear disingenuous. Plaintiffs themselves have proffered two experts, Ms. Shibata and Dr. Fletemeyer, who intend to

the pool had a design defect, and the Court will deny Plaintiffs' attempt to exclude this opinion.

Opinions Not Disclosed in Mr. Semke's Expert Report

Under Rule 26, expert reports must contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i).  There is no dispute that Mr. Semke testified at deposition to several opinions that were not included in his expert report, including that "E.M.J. definitely wasn't supervised and she should have been" (ECF No. 118 at 160:25–161:1) and that E.M.J. may have used some alternative method to enter the pool (*Id.* at 89:21–92:11).

While these purported opinions were expressed only in direct response to questioning by Plaintiffs' attorney, Bestway USA is incorrect that this questioning opens the door for Mr. Semke to share these unexplained and undisclosed opinions at trial. Merely asking about potential undisclosed opinions at deposition does not open the door and permit the admission of those opinions barring any further supplementation of the export's report to explain the basis for them.  Bestway USA has made no attempt to supplement Mr. Semke's report to include these opinions as required by Fed. R. Civ. P. 26(a)(2)(E) and 26(e)(2), and therefore the opinions have not been disclosed as required by Rule 26(a)(2)(B)(i).  Inasmuch as Mr. Semke's report contains no information regarding these opinions, Plaintiffs and the Court have been unable to fully assess how Mr. Semke arrived at those opinions and on what data he bases such opinions.  Mr.

---

testify that the pool was defective (or a had a "design flaw") and that the "proximate cause" of E.M.J.'s drowning was the nylon support strap.

16

Semke's report includes no analysis of other ways that E.M.J. could have entered the pool, and he provides no reasonable engineering basis for any opinions regarding alternative methods. Because these opinions were not properly disclosed and because Bestway USA has not shown by a preponderance of the evidence that Mr. Semke arrived at them through the reliable application of an engineering methodology to the facts and data in this case, these opinions will be excluded to the extent that Bestway USA attempts to elicit them on direct examination of Mr. Semke.

## Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion to exclude Fred Semke is **GRANTED in part** and **DENIED in part**. ECF No. 118. Mr. Semke's Opinions 1, 2, and 3 from his report will be excluded, however he will be permitted to offer evidence regarding the measurements taken. Mr. Semke will be permitted to testify regarding the engineering implications of the pool's design as expressed in his report's Opinions 4 and 5, though Mr. Semke opinions that that the pool's design was "not unique" and/or "was consistent with other polyvinyl chloride pools" will be excluded. Any of Mr. Semke's opinions that were not disclosed in his expert report as required by Fed. R. Civ. P. 26 will also be excluded.

Dated this 21st day of November, 2024.

_audrey g. Fleissig_
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

17