**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KYLE JUSTICE and ANNALEAH JUSTICE, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 4:22-cv-00050-AGF |
| | ) | |
| BESTWAY (USA), INC., and RURAL KING HOLDINGS, LLP, | ) | |
| | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| BESTWAY (USA), INC., | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MARY FLAKE and PATRICK FLAKE, | ) | |
| | ) | |
| Third-Party Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| RURAL KING HOLDINGS, LLP, | ) | |
| | ) | |
| Cross Claimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MARY FLAKE and PATRICK FLAKE, | ) | |
| | ) | |
| Cross Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |

RURAL KING HOLDINGS, LLP,    )
    )
    Third-Party Plaintiff,    )
    )
    v.    )
    )
BESTWAY (HONG KONG)    )
INTERNATIONAL LIMITED and    )
BESTWAY INFLATABLES &    )
MATERIALS CORPORATION,    )
    )
    Third-Party Defendants.    )

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Bestway (USA), Inc.'s motions to exclude the expert reports, testimony, and opinions of (1) Dianna Sullivan (ECF No. 115, the "Sullivan Motion"); (2) Peggy Shibata (ECF No. 116, the "Shibata Motion"); and (3) Dr. John Fletemeyer, PhD (ECF No. 117, the "Fletemeyer Motion"), all of whom were designated as experts by the Plaintiffs. The motions are fully briefed and ripe for disposition. For the reasons set forth below, the Court will deny the Sullivan Motion and grant in part and deny in part the Shibata Motion and the Fletemeyer Motion.

### Case Background

This case involves claims raised by Plaintiffs Kyle and Annaleah Justice against Defendants Bestway USA and Rural King Holdings, Inc. under the Missouri Wrongful Death Statute, Mo. Rev. Stat. § 537.080. Plaintiffs' claims arose from the drowning death of their minor daughter, E.M.J., in an above-ground pool on August 3, 2019. Plaintiffs raised five claims against Bestway USA: Count I – Strict Liability Design Defect; Count II – Strict Liability Failure to Warn; Count III – Negligence (under

theories of both negligent design and negligent failure to warn); Count IV – Breach of Express Warranty; and Count V – Breach of Implied Warranty.  ECF No. 5.

On July 26, 2024, Bestway USA filed its motion for summary judgment.  ECF No. 128.  Bestway USA sought summary judgment in its favor as to all of Plaintiffs' claims raised against it.  On October 22, 2024, the Court issued its Memorandum and Order on Bestway USA's motion for summary judgment, granting summary judgment in Bestway USA's favor as to Counts III, IV, and V.  ECF No. 157.  The Court also found that Plaintiffs were unable to carry their burden to establish that they were entitled to punitive damages and precluded Plaintiffs from seeking punitive damages against Bestway USA at trial.  Therefore, the only issues that remain for trial between Plaintiffs and Bestway USA are those raised under Plaintiffs' theories of strict liability design defect under Count I and strict liability failure to warn under Count II.

Plaintiffs designated Ms. Sullivan as an expert regard the impact of the death on Plaintiffs' mental health; Ms. Shibata as an expert regarding the pool's safety and design; and Dr. Fletemeyer as an expert in aquatics.  On May 31, 2024, Bestway USA filed the Sullivan Motion (ECF No. 115), the Shibata Motion (ECF No. 116), and the Fletemeyer Motion (ECF No. 117).  Plaintiffs filed their responses (ECF Nos. 134, 137, and 136), and Bestway USA filed its replies (ECF Nos. 142, 144, and 143).

**Legal Standard**

The admission of expert testimony in this Court is governed by Federal Rule of Evidence 702, which provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> >
> > (b) the testimony is based on sufficient facts or data;
> >
> > (c) the testimony is the product of reliable principles and methods; and
> >
> > (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

The rule was amended in 2000 in response to *Daubert v. Merrell Dow Pharmaceuticals, Inc*., which charged trial judges with a "gatekeeping" role to screen expert testimony for relevance and reliability.  509 U.S. 579, 590–93 (1993); *see also Russell v. Whirlpool Corp.*, 702 F.3d 450, 456 (8th Cir. 2012).  "To satisfy the relevance requirement, the proponent must show that the expert's reasoning or methodology was applied properly to the facts at issue."  *Barrett v. Rhodia, Inc.*, 606 F.3d 975, 980 (8th Cir. 2010) (citation omitted).  "To satisfy the reliability requirement, the party offering the expert testimony 'must show by a preponderance of the evidence both that the expert is qualified to render the opinion and that the methodology underlying his conclusions is scientifically valid.'"  *Id.* (quoting *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006)); *see also In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (3d Cir. 1994) ("[A]n expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable.") (citing *Daubert*, 509 U.S. at 589).

In the most recent amendment to Rule 702, made effective on December 1, 2023,[1] the advisory committee's note clarifies the Court's initial gatekeeping function and emphasizes that proponents of expert testimony must establish admissibility of the proffered evidence by a preponderance of the evidence.  Fed. R. Evid. 702 advisory committee's note to 2023 amendment; *see also Word v. Mine Safety Appliances Co.*, No. 5:14-CV-00445-BRW, 2016 WL 3034045, at *2 (E.D. Ark. Mar. 25, 2016) (stating "[w]hen a party proffers an expert witness, deciding whether Rule 702 is satisfied is a preliminary issue governed by Federal Rule of Evidence 104(a)[, which] requires the proponent of evidence to establish its admissibility by a preponderance of the evidence."); *United States v. Martinez*, 3 F.3d 1191, 1196 (8th Cir. 1993) ("Before admitting scientific expert testimony, the court must conclude, pursuant to Federal Rule of Evidence 104(a) that the proposed testimony constitutes (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue.") (citing *Daubert*, 509 U.S. at 592) (footnote omitted).  "The preponderance standard ensures that before admitting evidence, the court will have found it more likely than not that the technical issues and policy concerns addressed by the Federal Rules of Evidence have been afforded due consideration."  *Bourjaily v. United States*, 483 U.S. 171, 175 (1987).  The advisory committee's note also states that "many courts have held that the critical

---

[1]    The advisory committee's note clarifies that this amendment does not impose any new, specific procedures, but instead "is simply intended to clarify that Rule 104(a)'s requirement applies to expert opinions under Rule 702."  Fed. R. Evid. 702 advisory committee's note to 2023 amendment.

questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility.  These rulings are an incorrect application of Rules 702 and 104(a)."  Fed. R. Evid. 702 advisory committee's note to 2023 amendment.

"The inquiry envisioned by Rule 702 is a flexible one," designed to exclude "vague theorizing based on general principles" or "unsupported speculation," but not requiring an opinion to be "a scientific absolute in order to be admissible."  *Adams v. Toyota Motor Corp.*, 867 F.3d 903, 914–16 (8th Cir. 2017) (cleaned up); *see also Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141–42 (1999) ("[T]he test of reliability is 'flexible,' and *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case.  Rather, the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability opinion."); *Unrein v. Timesavers, Inc.*, 394 F.3d 1008, 1011 (8th Cir. 2005) (stating that the "evidentiary inquiry is meant to be flexible and fact specific, and a court should use, adapt, or reject *Daubert* factors as the particular case demands.") (citation omitted).  Further, Rule 702(d) has been amended to emphasize that the reliability analysis applies to each opinion offered.  Fed. R. Evid. 702 advisory committee's note to 2023 amendment.

**Discussion**

<u>The Sullivan Motion</u>

A.    <u>Background</u>

Bestway USA has moved to exclude the expert report, testimony, and opinions of Plaintiffs' expert Diana Sullivan.  Ms. Sullivan, a Licensed Mental Health Counselor ("LMHC"), conducted phone interviews with Plaintiffs Kyle and Annaleah Justice "to evaluate the psychological process and circumstances that will help [her] understand the duration[,] severity and of [sic] symptoms (if any), to arrive at a diagnosis (if any), and to provide an expert opinion about the grief and bereavement process experienced by the family of the deceased . . . ."  ECF No. 115-1 at 1.  Ms. Sullivan is prepared to testify to the following:

> It is my opinion, to a reasonable degree of certainty in my field, that Mr. Justice currently suffers from the following:
>
>     1.    Post traumatic stress syndrome ("PTSD");
>     2.    Major depressive disorder ("MDD"); and
>     3.    Complicated grief and bereavement syndrome.
>
> It is my opinion that Mr. Justice's PTSD, MDD, and complicated grief and bereavement syndrome were, and are, caused by the sudden and tragic death of his daughter.
>
> It is my opinion, to a reasonable degree of certainty in my field, that Mrs. Justice currently suffers from the following:
>
>     1.    Post-traumatic stress syndrome ("PTSD");
>     2.    Major depressive disorder ("MDD");
>     3.    Complicated grief and bereavement syndrome; and
>     4.    Anxiety

> It is my opinion that Mrs. Justice's PTSD, MDD, complicated grief and bereavement syndrome, and her anxiety were, and are, caused by the sudden and tragic death of her daughter.

*Id.* at 15.  It also appears that Ms. Sullivan intends to testify that Plaintiffs' minor son, who is not a party to this action, "is also experiencing grief . . . ."  *Id.* at 28.

Bestway USA challenges the admissibility of Ms. Sullivan's opinions on two grounds.  First, Bestway USA argues that Ms. Sullivan's opinions are not the result of reliable principles or methods.  Bestway USA supports this argument by pointing to testimony from Ms. Sullivan that (1) she did not perform any formal diagnostic tests on Plaintiffs before arriving at her conclusions; (2) she failed to review Plaintiffs' medical history or medical records; (3) she spoke with Plaintiffs over the phone for about two hours each and never spoke to Plaintiffs' minor son; (4) she did not arrive at her conclusions through the use of a differential diagnosis; (5) she arrived at her conclusion through inference; and (6) she only included information in her report regarding the application of the Diagnostic and Statistical Manual, Fifth Edition ("DSM-5") to Plaintiffs' symptoms after Plaintiffs' attorney requested that she do so.  For these reasons, Bestway USA argues that Ms. Sullivan's opinions were not arrived at through a reliable methodology or through application of that methodology to sufficient facts or data.

Second, Bestway USA argues that Ms. Sullivan's opinions should be excluded because they would not be helpful to the jury.  In particular, Bestway USA asserts that Ms. Sullivan's testimony is about Plaintiffs' grief and bereavement, a form of damages that is specifically precluded under Missouri's wrongful death statute, Mo. Rev. Stat. § 537.090.  Bestway USA reasons that because damages for grief and bereavement are

not permitted under Missouri law, Ms. Sullivan's testimony regarding the grief and bereavement suffered by Plaintiffs as a result of their daughter's death is irrelevant.

Plaintiffs oppose the Sullivan Motion.  Plaintiffs assert that Bestway USA's reliance on its "laundry list of things [Ms.] Sullivan did not do when forming her opinions" should carry no weight because, contrary to what Bestway USA believes, Ms. Sullivan arrived at her opinions through the use of a reliable methodology applied to sufficient facts and data.  ECF No. 134 at 5.  Plaintiffs reject the suggestion that Ms. Sullivan was required to use formal testing or in-person assessments to arrive at her diagnoses.  Plaintiffs state that Bestway USA has not come forward with evidence that LMHCs are required to conduct the kind of formal testing and in-person assessment that Bestway USA says are part of a proper methodology in Ms. Sullivan's field.  Plaintiffs point out that Ms. Sullivan used a differential diagnosis, contrary to Bestway USA's assertion that she did not, and based her opinions and diagnoses on her interviews with Plaintiffs just as she would in her everyday counseling practice.  As to Ms. Sullivan's inclusion of the DSM-5 analysis only at Plaintiffs' attorney's request, Plaintiffs argue that whatever was not included in a previous version of Ms. Sullivan's report is irrelevant because the report now includes that analysis and the analysis will be helpful to the jury. Plaintiffs also reject the contention that Ms. Sullivan's conclusions should be excluded for failing to review Plaintiffs' previous medical records because Plaintiffs have no previous mental health records for Ms. Sullivan to review.  Plaintiffs have also clarified that Ms. Sullivan has no intention of testifying about the grief experienced by Plaintiffs' minor son.

Plaintiffs further contend that Ms. Sullivan's testimony will be helpful to a jury because the testimony regarding the Plaintiffs' PTSD, depression, and anxiety "are different from grief and bereavement."  ECF No. 134 at 9.  Plaintiffs argue that in *Rugh v. FedEx Freight, Inc.*, 4:20-cv-1566-JAR, 2022 WL 17039153 (E.D. Mo. Nov. 17, 2022) this Court permitted similar diagnostic testimony in a wrongful death case because such testimony helps the jury determine "the effect of the injury on the parent-child relationship" which "may be important in establishing the nature and extent of the plaintiff's loss."  ECF No. 134 at 9 (quoting *Rugh*, 2022 WL 17039153 at *3).

In its reply, Bestway USA reiterates much of what it argues in its motion. Bestway USA cites to the American Counseling Association Code of Ethics, stating that the code "places implicit emphasis on the reliability and validity of standardized, quantitative assessment instruments, or tests."  ECF No. 142 at 2.  Bestway USA does not explain how the "implicit emphasis" within the ACA ethical standards undermines Ms. Sullivan's methodology here.  Bestway USA also points to Ms. Sullivan's testimony that she did not "do any differential for alternative causes of [Plaintiffs'] symptoms."  *Id.* at 3 (citing 142-1 at 115:18-24).  Bestway USA implies that Ms. Sullivan should not have taken Plaintiffs' statements at face value and that her use of the DSM-5 was simply a post-hoc rationalization of her findings.  Bestway USA then attempts to distinguish the facts of *Rugh* with Ms. Sullivan's testimony in this case and specifically points to the statement in Ms. Sullivan's report where she avers that she was hired to assess the effects of Plaintiffs' grief and bereavement caused by E.M.J.'s death.  For these reasons and for

10

those expressed in its memorandum of law, Bestway USA request that the Court exclude Ms. Sullivan's testimony in its entirety.

B.    Analysis

The preponderance of the evidence indicates that Ms. Sullivan's testimony is admissible.  Despite Bestway USA's arguments to the contrary, the Court finds that Ms. Sullivan arrived at her conclusions using a reliable methodology and based her opinions on sufficient facts and data.  Ms. Sullivan, as a LMHC, has over thirty-five (35) years of experience in the field of mental health counseling, and she applied that extensive experience when evaluating Plaintiffs.  In arriving at her opinions regarding Plaintiffs, Ms. Sullivan "followed the same procedures that [she] use[s] in [her] practice when conducting an intake" and she specifically followed the "Shea (1998) protocol."  ECF No. 134-2 at 4.  She conducted phone interviews with Plaintiffs that lasted nearly two hours in total for each Plaintiff.  She used a differential diagnosis to arrive at several diagnoses.  *Id.* at 3 ("In my practice . . . , I utilize the method of differential diagnosis").  Ms. Sullivan did not rely on the Plaintiffs' previous mental health records because, as she explained, there were none.  134-3 at 59:2–14.  Bestway USA believes that Ms. Sullivan must administer some standardized, quantitative assessments before she can arrive at any diagnoses, though Bestway USA does not state what testing she should have done, nor does it provide evidence that failing to conduct such testing undermines the reliability of Ms. Sullivan's methodology and diagnoses.  The Court finds that Ms. Sullivan's conclusions are the result of the reliable application of her expertise to the facts of this case and are not the result of speculation and conjecture.

11

While Bestway USA points out that Ms. Sullivan failed to include DSM-5 criteria in her initial report to Plaintiffs' counsel, this does not disqualify her testimony. Whatever was in Ms. Sullivan's draft report that was never shared with Bestway USA is simply not relevant. The report she has produced applies her analysis of Plaintiffs' symptoms to the diagnostic criteria provided by the DSM-5, a procedure that further supports the finding that she used a reliable methodology to form her opinions in this case. Bestway USA can cross-examine Ms. Sullivan regarding any post-hoc application of the DSM-5 criteria.

Plaintiffs have clarified that Ms. Sullivan does not intend to testify regarding the grief Plaintiffs' son experienced. Because Plaintiffs' minor son is not a party to this action, any testimony on his mental state will be excluded as irrelevant.

The issue of whether Ms. Sullivan's testimony should be excluded because damages for grief and bereavement are precluded under Missouri law is a closer matter, but ultimately the Court will permit her to testify to her conclusions. Under Mo. Rev. Stat. § 537.090:

> [T]he trier of the facts may give to the party or parties entitled thereto such damages as the trier of the facts may deem fair and just for the death and loss thus occasioned, having regard to the pecuniary losses suffered by reason of the death, funeral expenses, and the reasonable value of the services, consortium, companionship, comfort, instruction, guidance, counsel, training, and support of which those on whose behalf suit may be brought have been deprived by reason of such death and without limiting such damages to those which would be sustained prior to attaining the age of majority by the deceased or by the person suffering any such loss. In addition, the trier of the facts may award such damages as the deceased may have suffered between the time of injury and the time of death and for the recovery of which the deceased might have maintained an action had death not ensued. The mitigating or aggravating circumstances attending the death

12

may be considered by the trier of the facts, but damages for grief and bereavement by reason of the death shall not be recoverable.

On this issue, this Court's decision in *Rugh* is instructive.  In that case, the plaintiff sued the defendants under the Missouri wrongful death statute after her daughter's death following a motor vehicle accident.  *Rugh*, 2022 WL 17039153, at *1.  The plaintiff designated a psychiatrist to testify regarding "the effect that [plaintiff's] daughter's death has had on her from a psychiatric standpoint."  *Id.* at *2.  In his report, the plaintiff's expert diagnosed the plaintiff with PTSD and MDD, much like Ms. Sullivan has done in her report regarding Plaintiffs.  The expert also concluded that the plaintiff's daughter's death caused her mental conditions.  The defendants argued that the expert's testimony should be excluded because grief and bereavement damages are precluded by Mo. Rev. Stat. § 537.090.  The plaintiff argued—just as Plaintiffs do here—that the testimony was admissible because it would help the jury to understand "the loss [plaintiff] . . . suffered as a result of her daughter's death, including her daughter's companionship, comfort, and counsel as defined from a psychiatric perspective."  *Id.*

After emphasizing the court's "great latitude in determining whether expert testimony meets the requisites of [Fed. R. Evid.] 702," *id.* at 3 (quotation marks and citation omitted), the Court denied the motion to exclude.  The Court relied on *Evans v. FirstFleet, Inc.*, for the contention that "[t]he physical, emotional, and psychological relationship between a parent and child must be considered when computing the loss of companionship, comfort, counsel, and support of a child for a parent."  *Pugh*, 2022 WL 17039153, at *3 (citing *Evans v. FirstFleet, Inc.*, 345 S.W.3d 297, 305 (Mo. Ct. App.

13

2011)).  The Court stated that in its view, "expert psychiatric testimony describing the effect of the injury on the parent-child relationship may be important in establishing the nature and extent of the plaintiff's loss." *Id.* (citation omitted).  The Court found that the expert's opinions were "relevant and admissible on the issues concerning the effect of the injury on the parent-child relationship as well as the nature and extent of Plaintiff's loss of companionship, comfort, counsel, and support." *Id.*  Finally, the Court stated that it would consider a limiting instruction regarding such testimony.

Bestway USA's attempt to distinguish *Rugh* is unpersuasive.  First, Bestway USA emphasizes that the *Rugh* decision is not binding on this Court.  While that is true, its holding remains instructive.  Bestway USA also states that "[t]he expert in that case performed an in-person mental examination that included structured, quantitative psychological testing."  ECF No. 142 at 4.  But Bestway USA provides no citation within *Rugh* that supports this assertion.  In fact, there is no information in *Rugh* indicating how the expert conducted his analysis, so this argument carries no weight.  In any event, the Court determined above that Ms. Sullivan used an acceptable methodology.  Bestway USA further argues that Ms. Sullivan's opinions do not address the loss of companionship, comfort, counsel, and support and instead focus explicitly on grief and bereavement.  The Court will not take such a limited view of the overall value of Ms. Sullivan's opinions in assisting the jury.  However, Ms. Sullivan will be required to express her opinions within the context of the damages permitted by the statute and may not expressly testify regarding grief or bereavement.  The Court encourages Plaintiffs to provide the parties with a proposed rephrasing of her opinions.

14

The Court agrees with the conclusion in *Rugh* and its application to Ms. Sullivan's testimony and will deny Bestway USA's motion to exclude it. Here, Ms. Sullivan's testimony is relevant and admissible for the jury to assess "the reasonable value of the services, consortium, companionship, [and] comfort" that resulted from Plaintiffs' loss of their daughter. These damages are specifically permitted by Mo. Rev. Stat. § 537.090 even if Ms. Sullivan's report couches her conclusions in the context of the Plaintiffs' grief and bereavement, which are not permitted. The Court will therefore allow Ms. Sullivan to testimony to her conclusions at trial—but not expressed in the context of grief and bereavement—and it will entertain an appropriate limiting instruction at the proper time.

The Shibata Motion

    A.   Background

Bestway USA argues that the expert report and opinions of Plaintiff's expert Peggy Shibata should be excluded. Ms. Shibata holds a bachelor's degree in mechanical engineering and master's degrees in mechanical and biomedical engineering. ECF No. 113-2 at 1. She claims expertise in "mechanical engineering and biomechanics, with particular expertise in accident reconstruction, rigid body dynamics, computational modeling and analysis, human injury tolerance, and injury analyses associated with transportation, recreational activities and equipment, and falls." *Id.* According to her expert report, Ms. Shibata's task in this case was to "perform a safety analysis with respect to the design of the subject pool and this incident." ECF No. 113-1 at 4. Her report offers fifteen (15) numbered conclusions and opinions "to a reasonable degree of

engineering and scientific certainty." *Id.* at 30–31.  Relevant to Bestway USA's motion,[2]

Ms. Shibata plans to testify to the following:

1.   According to the recorded statements, police investigation, and medical findings, 31-month-old [E.M.J.] was found face down in the subject Bestway above ground pool after apparently using the nylon strap and side of the pool to climb into the water.

2.   The nylon strap and climbability of the subject pool wall resulted in [E.M.J.] gaining access to the pool water.

3.   Access to filled pools by small children leading to drowning is a well-known hazard in the pool industry as evidenced by standards and guidelines related to pool barriers and publications authored by the safety community related to preventing child drownings.

4.   The circumferential horizontal strap on the subject pool creates a foothold, reducing the vertical distance to the top of the pool, and making the pool wall noncompliant with the requirements for a conforming barrier.

5.   The subject pool design is defective and unreasonably dangerous due to the climbability of the pool wall.

6.   The instructions provided in the subject pool's owner's manual do not clearly inform the user that the pool wall is not a conforming barrier and that a separate conforming barrier other than the pool wall must be provided by the user.

. . .

10.   Bestway (USA) failed to perform any hazard identification for the subject pool design, prior to, or after, the sale of the subject pool.

11.   Bestway (USA) failed to perform any risk assessment for the subject pool design, prior to, or after, the sale of the subject pool.

---

[2]   The Court already granted Defendant Rural King's Motion to Exclude Ms. Shibita's Opinions 7, 8, and 9.  ECF No. 159.

12.    Bestway (USA) failed to perform any testing to identify potential design defects related to the climbability of the subject pool wall prior to, or after, the sale of the subject pool.

13.    In the subject pool owner's manual, Bestway (USA) failed to properly and explicitly instruct the Justice family and other users that since the nylon strap can be used as a foothold, an additional barrier to the subject pool is required.

14.    Bestway (USA), through the language provided in the owner's manual, gave the Justice family a false sense of security and implied to them that they did not need to construct an additional barrier surrounding the subject pool because the pool wall itself could be a barrier.

15.    Bestway (USA) knew, or should have known, that the pool wall was not a proper barrier because of the nylon strap foothold.

ECF No. 116-1 at 30–31.

Bestway offers several arguments why Ms. Shibata's opinions should be excluded, including that they are "not based on sufficient facts or data, . . . do not have a reliable basis in accepted principles and methods, nor has she applied those principals to the specific facts of this case, . . . and would not serve to help the jury reach a decision in this matter."  ECF No. 116 at 4.

Bestway USA suggests that Ms. Shibata's conclusions cannot be admitted because they are based on mere speculation.  Bestway USA supports its position by pointing to various portions of Ms. Shibata's deposition testimony where she states that she did not inspect or take measurements at the scene of the accident, did not make a specific assessment of E.M.J.'s specific capabilities, did not assess studies regarding the abilities of children the same age as E.M.J. to climb barriers, and did not construct an exemplar barrier on which to conduct her own analysis.  Much of the remainder of Bestway USA's

17

argument hinges on its interpretation of whether the nylon strap on the pool could act as a foothold. Bestway USA asserts that any foothold must be at least 0.4" wide and anything less cannot be considered a foothold. Bestway USA states that Ms. Shibata did not take any measurements of the nylon strap near where E.M.J. allegedly entered the pool, so she cannot reasonably conclude that the nylon strap acted as a foothold. Bestway USA cites to various Missouri state court cases regarding the admissibility of expert testimony, but it does not explain why those are relevant to the admissibility of experts in this case, which is governed by the Federal Rules of Evidence. At bottom, Bestway USA argues that Ms. Shibata's conclusions are nothing more than an uncritical confirmation of the conclusions from the Warren County Sheriff's Report prepared by Detective Doerr, which found that E.M.J. entered the pool by using the pool's nylon support strap as a foothold.

Bestway USA also argues that Ms. Shibata's testimony should be excluded because it is not the product of a reliable application of principles or methods to the facts. Much of this argument is a restatement of Bestway USA's previous argument. Bestway USA takes issue with Ms. Shibata's conclusions because she did not conduct any testing on a pool of the same size and with the same nylon strap as the pool at issue here. Bestway USA also argues that Ms. Shibata's conclusions about E.M.J.'s climbing abilities is incorrectly based on saferproducts.gov reports of other children who were able to climb similarly designed pools and are not based on Ms. Shibata's knowledge regarding E.M.J.'s climbing abilities. Bestway USA contends that Ms. Shibata's

conclusions are therefore not the result of reliable principles and methods applied to these facts.

As to its argument that Ms. Shibata's opinions should be excluded because they will not be helpful to the jury, Bestway USA again relies on arguments that Ms. Shibata did not arrive at her opinions through a reliable analysis of the evidence. This time, however, Bestway USA also attacks Ms. Shibata's conclusions regarding the adequacy of the pool's warnings. Bestway USA cites to Ms. Shibata's deposition testimony where she appears to agree that a consumer reading both the warning in the pool's manual and the government created guidelines regarding above-ground pool safety would be informed that additional safety precautions, including construction of an additional barrier around the pool, were necessary to ensure that the pool was safe. Bestway USA argues that the jury need not hear Ms. Shibata's conclusions on this issue because the jury could read the pool's warnings and the documents the warnings reference and come to its own conclusions about what a consumer would understand.

Plaintiffs argue that Bestway USA has failed to establish that Ms. Shibata's opinions should be excluded. In support of the reliability of Ms. Shibata's opinions, Plaintiffs begin by describing Ms. Shibata's qualifications and then summarizing the evidence she relied on in her report. Plaintiffs attack Bestway USA's list of things that Ms. Shibata failed to do as simply unnecessary steps that were not required in this case. ECF No. 137 at 5 ("The scientific method does not require a scientist to gather and rely on unnecessary information when reaching a conclusion."). As to the measurement of the gap between the pool wall and the nylon strap and whether it constitutes a foothold,

Plaintiffs argue that Ms. Shibata relied on photographs of the pool and the support strap to determine that at certain places along the pool wall there was a gap of about two (2) inches between the pool wall and the nylon strap.  Plaintiffs also argue that, regardless of whether Ms. Shibata concluded that the nylon band created a foothold of 0.4" or more, there is no evidence that a foothold of such a size was required for E.M.J. to enter the pool using the strap.  Plaintiffs emphasize that Ms. Shibata relied on E.M.J.'s medical records that included her height and weight to assess whether she was physically capable of climbing the pool wall using the nylon support strap as a foothold.

Plaintiffs respond to Bestway USA's suggestion that Ms. Shibata did not reliably apply the facts to her methodology by stating again that Ms. Shibata is under no requirement to recreate the scene and test whether children of E.M.J.'s age could climb the pool wall.  Plaintiffs argue that such a study is not necessary for Ms. Shibata to form her conclusions and is not required for her conclusions to be reliable.

Plaintiffs also argue that Ms. Shibata's testimony will be helpful to the jury. Plaintiffs contend that Bestway USA merely attacks the reliability of Ms. Shibata's opinions rather than their relevance.  Plaintiffs state that Ms. Shibata's conclusions are helpful because Ms. Shibata is an expert with the experience necessary to determine how E.M.J. was able to enter the pool.  Plaintiffs also argue that Ms. Shibata's alleged admission that a consumer reading the pool's warnings and the referenced standards does not undermine her opinion regarding the inadequacy of the pool's warnings.  In support, Plaintiff's cite to *Brown v. Bay State Abrasives*, 821 S.W.2d 531, 534 (Mo. Ct. App. 1991) where the Missouri Court of Appeals found that it was improper to admit expert

testimony about the adequacy of warnings contained in the ANSI standards because consumers should not be expected to read standards referenced within a manufacturer-issued warning.  Plaintiffs assert that Ms. Shibata's opinion that the pool's warning was not sufficient will be helpful to the jury to decide the issue of whether the warning was adequate.

Bestway USA, in its reply, argues that Ms. Shibata's report and testimony should be excluded because: (1) the only basis of her opinions is the Warren County Sheriff's Report, which it argues is hearsay; (2) the issue of whether the nylon strap constitutes a foothold is a "red herring" because Ms. Shibata does not opine that a "foothold" was used to gain access to the pool and therefore her testimony cannot support Plaintiffs' theory of causation; and (3) Ms. Shibata's testimony about the adequacy of the pool's warnings is irrelevant because Plaintiffs and Plaintiffs' family testified that they knew that an additional barrier was needed to make the pool safe, and therefore the pool's warnings could not have misled them into believing one was not necessary.

B.    Analysis

As an initial matter, because the Court has granted summary judgment for Bestway USA as to Plaintiffs' negligence claims, some of Ms. Shibata's opinions are no longer relevant.  ECF No. 157.  In particular, opinions relating to Bestway USA's duty and breach are no longer at issue.  Ms. Shibata's Opinions 3, 10, 11, 12, and 15 relate directly to the issue of Bestway USA's alleged duty or knowledge of the pool's potential dangers.  Because Plaintiffs will no longer need to establish these elements of negligence, these opinions will no longer be helpful to the jury and could mislead the jury as to

Bestway USA's duties.  For these reasons, Ms. Shibata's Opinions 3, 10, 11, 12, and 15 will be excluded.

Opinion 1 is inadmissible because it is a simple statement of fact that does not require expert testimony.  *See Lee v. Andersen*, 616 F.3d 803, 809 (8th Cir. 2010) ("If the subject matter [of the expert's testimony] is within the jury's knowledge or experience, . . . the expert testimony remains subject to exclusion because the testimony does not then meet the helpfulness criterion of Rule 702.") (internal quotations and citation omitted).  Testimony from witnesses at the scene and the conclusions in the Warren County Sheriff's Report can establish the facts included in Ms. Shibata's Opinion 1 without her testimony.[3]  While Ms. Shibata may testify regarding her reliance on those statements and perhaps the conclusions in the Report in forming her conclusions, she cannot testify to them in the form of opinion.  The Court will therefore exclude Ms. Shibata's Opinion 1.

Plaintiffs have failed to establish by the preponderance of the evidence that Ms. Shibata's Opinion 2—that the nylon strap and the climbability of the pool wall resulted in E.M.J. gaining access to the pool—is based on sufficient facts and data and is the result of a reliable application of a methodology.  Ms. Shibata is an expert in engineering, biomechanics, product safety, and accident reconstruction, among other topics related to human factors.  To form this opinion, Ms. Shibata appears to have relied on the testimony

---

[3]    The Court has not been called upon to rule on the extent to which the Sheriff's Department's conclusions will be permitted and expresses no opinion at this time regarding the admissibility of witness testimony or Bestway USA's arguments that the Warren County Sheriff's Report is inadmissible hearsay.

of other witnesses, the police and incident reports following E.M.J.'s death, E.M.J.'s medical records, and reports from saferproducts.gov indicating other instances of toddlers climbing into or attempting to climb into other similarly designed pools.  She did not testify that these are the types of facts and data she would generally rely upon to form opinions about biomechanics, engineering, product safety, accident reconstruction, or human factors analysis.  While she states that she "employed the scientific method as a framework" (ECF No. 116-1 at 4), Plaintiffs have not come forward with any other evidence of how Ms. Shibata applied the scientific method to the issues of this case.  She admitted at deposition to not consulting any scientific studies regarding the climbing abilities of children or conducting any testing of the abilities of children of a similar size and age to E.M.J.  ECF No. 116-2 at 46:15–47:18.  She further admits that her opinion regarding E.M.J.'s ability to climb the pool is based on her "general understanding of the capabilities of children" informed by her past experiences working with children, though she further admits that her past experiences did not include looking at the same type of barrier, the same height of barrier, or the same age of children.  *Id.* at 47:19–48:25.  Ms. Shibata failed to explain at deposition or in her report how her general understanding of children's abilities could be applied to the specific facts of this case.  "An expert's opinion is subject to being rejected if it is substantially based upon the expert's subjective belief or unsupported speculation."  *Wine v. Comer*, 590 F. Supp. 3d 1200, 1205 (E.D. Mo. 2022) (citation omitted).  "A court is not required 'to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.'"  *Id.* (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

23

Here, Ms. Shibita evaluated E.M.J.'s climbing abilities using only her intuitive understanding of children's general climbing abilities, and she has been unable to identify a scientific methodology she used to arrive at her conclusion.  The Court finds that this opinion is not based on sufficient facts or data nor was it arrived at through the use of a reliable methodology applied to the facts, and it will therefore be excluded.

Opinion 5 is admissible.  Ms. Shibata has an expertise in engineering and is offering her engineering opinion regarding the safety of the pool's design.  She is also an expert in product safety generally and can testify using this experience that this pool's design, specifically as it relates to the nylon support strap, is unreasonably dangerous.  Ms. Shibata reviewed relevant safety standards regarding above-ground pools and has concluded that the nylon support strap makes the pool's wall climbable and therefore ineffective as the sole barrier preventing young children from entering the pool.  The Court will permit Ms. Shibata to testify to Opinion 5.

The only remaining opinions then are Opinions 4, 6, 13, and 14.  Opinion 4 pertains to whether the nylon strap constitutes a foothold and therefore makes the pool wall a non-conforming barrier.  Opinions 6 and 13 are substantially the same in that they both state that the pool's owner's manual failed to inform consumers that the pool wall included a foothold via the nylon support strap, thus making it a non-conforming barrier and requiring the consumer to construct an additional barrier around the pool to make it safe.

Plaintiffs have met their burden to establish that that Opinions 4, 6, and 13 are admissible.  Ms. Shibata has extensive experience in the field of product safety analysis.

24

As stated above, in assessing whether the pool's wall was a conforming barrier or whether the nylon support strap created a foothold, Ms. Shibata read several sets of pool safety standards and determined that the measurements of the pool and pictures of the nylon support strap indicate that the nylon support strap was a foothold and therefore the pool's wall was not a conforming barrier. Her assessment of these standards and her application of those standards to the facts and data of this case appear reliable and well within her area of expertise.

But Opinion 14 that the pool's warnings gave Plaintiff's a "false sense of security and implied to them that they did not need to construct an additional barrier" will be excluded because it is directly contradicted by other testimony. Ms. Shibata, during her deposition, was confronted with Mr. Justice's deposition testimony where he testified that he and Mr. Flake had discussed putting an additional fence around the pool. ECF No. 116-2 at 138:22–140:14. She admits that she had previously reviewed this testimony and that Mr. Justice, in this testimony, described a desire to put an additional barrier around the pool. Ms. Shibata does not explain how she could have reliably arrived at her conclusion that Mr. Justice had a "false sense of security . . . they that did not need to construct an additional barrier" when he testified to his intention to construct such a barrier. Additionally, there is no evidence in the record that Mr. Justice or the Flakes read the pool's warnings. Without having read the pool's warnings, Ms. Shibata cannot reliably say that the warnings gave Plaintiffs or the Flakes a "false sense of security." Because record evidence directly contradicts Ms. Shibata's conclusion regarding the pool's warnings in Opinion 14, it is unreliable and will be excluded.

25

In sum, Ms. Shibata's Opinions 1, 2, 3, 10, 11, 12, 14, and 15 will be excluded, and she will be permitted to testify to Opinions 4, 5, 6, and 13.

The Fletemeyer Motion

A.    Background

Bestway USA has moved to exclude the report and testimony of Plaintiffs' drowning expert, Dr. John Fletemeyer.  Dr. Fletemeyer has a bachelor's degree in anthropology and physical education from Ball State University.  He holds unspecified post-graduate degrees from the University of Wisconsin and the University of Cape Town in South Africa.  He has a doctoral degree from Florida International University with an emphasis on coastal science and education.  Dr. Fletemeyer has "been continuously involved in aquatics for the past 50 years and [has] several professional certifications" related to lifeguarding, first aid, and water rescue.  He is currently the executive director of the Aquatic Law Institute and the Aquatic Law Symposium Program.  ECF No. 117-1 at 1.

Dr. Fletemeyer offers the following opinions:

[1.][4] The fatal drowning of [E.M.J.] was preventable.

[2.] The proximate cause of this fatal drowning was the nylon support strap surrounding the pool's perimeter.  Being only 14.5 inches from the ground, it conveniently provided [E.M.J.] with a foot hold allowing her to climb over the pool's edge and into the water[.]

---

[4]    While Dr. Fletemeyer sets out his opinions in separate paragraphs, these paragraphs were not numbered.  The Court has numbered Dr. Fletemeyer's opinions for the sake of its analysis and discussion.

26

[3.] If not for the nylon strap, a toddler of [E.M.J.]'s size and age wouldn't have been able to gain access into the pool and drown.

Considering that Kyle Justice, the father of the victim, had earlier removed the ladder from the pool, this was the only possible way the victim entered the pool.

[4.] Detective Jeff Doerr observed a child's footprint near the nylon strap. He concluded that the footprint likely belonged to [E.M.J.] and that the nylon strap was how she managed to get into the pool.

[5.] Without the ladder and without the nylon strap.[sic]  It would not have been possible for [E.M.J.] to climb over the edge of the pool and drown.

Consequently, any allegation by the defense that the victim entered the pool differently is not supported by the facts.

[6.] The nylon support strap circling the pool represents a serious design flaw responsible for making the pool inherently dangerous especially to young children the victim's age.

[7.] The fact that there has [sic] been similar fatal drownings and near drownings prior to this one where children used the nylon strap as a foot support, this indicates a wanton and conscious disregard for the safety of this product by its manufacturer.

[8.] There are none of the contributing events mentioned earlier in this report that would indicate that this was a passive drowning event.  As such, my opinion is that this was an active drowning and consequently, [E.M.J.] experience [sic] horrific pain and suffering before becoming unconscious, progressing from clinical death to biological death.

[9.] Mr. Kyle Justice, the father, states in his deposition . . . that earlier he had removed the ladder from the pool.  Consequently, he reasonably believed that the pool was safe.

ECF No. 117-1 at 4–5.

Bestway USA argues that Dr. Fletemeyer's opinions should be excluded because they are not based on sufficient facts or data, are not the result of a reliable application of a methodology to the facts, and would not help the jury.  Bestway USA states that Dr.

Fletemeyer failed to personally conduct an investigation into the scene of the drowning, and therefore does not base his opinions on sufficient facts or data.  Bestway USA argues that because Dr. Fletemeyer did not conduct an independent investigation of the scene and had no knowledge of E.M.J.'s height or weight, he also cannot reliably exclude other potential ways that E.M.J. may have entered the pool.  Bestway USA further attacks Dr. Fletemeyer's opinions for relying on the alleged hearsay contained within the Warren County Sheriff's Report.  Additionally, Bestway USA contends that because Dr. Fletemeyer was simply asked to assume that there were previous reports about similar drownings and is not personally aware of these reports, his opinions regarding the manufacturer's knowledge of the pool's potential dangers is unsupported by the evidence. Bestway USA again relies on findings from Missouri state courts regarding the admissibility of expert testimony but does not explain why those decisions are applicable to this case.

Bestway USA further states that Dr. Fletemeyer did not arrive at his conclusions through the use of a reliable methodology.  Specifically, Bestway USA argues that Dr. Fletemeyer's own book, which he relied on in forming his conclusions here, states that the "overwhelming proximate cause of minor drownings are due to the lack of adult supervision," (ECF No. 117 at 11) yet Dr. Fletemeyer discounts this explanation as the cause of E.M.J.'s drowning in this case.  Bestway USA points to Dr. Fletemeyer's testimony where he admits that E.M.J.'s drowning would have been prevented if she was being adequately supervised by an adult.

28

Bestway USA contends that Dr. Fletemeyer's opinions will not be helpful to the jury, but its arguments go instead to whether Dr. Fletemeyer is qualified to offer opinions about the pool's design and not to the relevance of his opinions. Bestway USA asserts that Dr. Fletemeyer has no engineering expertise or legal training and therefore cannot offer opinions on whether the pool was defectively designed.

Plaintiffs argue that Dr. Fletemeyer is qualified to offer opinions regarding the design of the pool, that he did not need to perform his own investigation of the incident to arrive at his conclusions, and that his opinion regarding proximate cause is the result of a reliable application of his methodology to the facts of the case. Plaintiffs rely on Dr. Fletemeyer's education and experience to support its argument that he is qualified to testify to his opinions, including his opinions regarding the design of the pool and the proximate cause of E.M.J.'s drowning. Plaintiffs further contend that Dr. Fletemeyer's opinions do not require that he be an engineer or a legal expert. Plaintiffs assert that Dr. Fletemeyer's opinions are supported by competent evidence such as the "pool's measurements, [E.M.J.]'s weight and height, and the existence of prior incidents involving similar pools and children of similar age." ECF No. 136 at 9.

As to whether Dr. Fletemeyer arrived at his opinion through a reliable application of a methodology to the case facts, Plaintiffs argue that his causation opinion is not undermined by his admission that the lack of adult supervision was a contributing cause of E.M.J.'s death because "[t]here can be more than one proximate cause of an injury." *Id.* at 10 (citing *Mengwasser v. Anthony Kempler Trucking, Inc.*, 312 S.W.3d 368, 373

29

(Mo. Ct. App. 2010)).  Plaintiffs argue that any issues with Dr. Fletemeyer's causation opinion are matters for cross-examination and do not justify exclusion.

Finally, Plaintiffs argue that Bestway USA has not established that Dr. Fletemeyer's testimony will not be helpful to a jury because Bestway USA has not attacked the relevance of the opinions.  Plaintiffs highlight Dr. Fletemeyer's long-held expertise as an aquatic safety expert to support their argument that his opinions regarding how E.M.J. accessed the pool are beyond the knowledge of the average lay juror.

In its reply, Bestway USA reiterates its arguments that it raised in the Fletemeyer Motion.  Bestway USA again argues that Dr. Fletemeyer's admitted lack of expertise in engineering or design precludes him from testifying to the adequacy of the pool's design. Bestway USA also points to the lack of evidence in the record of similar drownings in Bestway designed and manufactured pools to support its argument that Dr. Fletemeyer's opinions regarding Bestway USA's alleged wanton and conscious disregard for E.M.J.'s safety is unsupported by the evidence.  Bestway USA finally argues that Dr. Fletemeyer is not an attorney and cannot therefore offer legal conclusions regarding the proximate cause of E.M.J.'s death.

B.    Analysis

As an initial matter, Dr. Fletemeyer's Opinion 7, that the pool's manufacturer acted with wanton and conscious disregard for the safety of the pool, will be excluded because it is no longer relevant to the issues in this case.  As stated above, the Court has already granted summary judgment in favor on Bestway USA on the issue of Bestway USA's alleged negligence and as to punitive damages.  Because this opinion relates

specifically to the issue of Bestway USA's knowledge of the pool's danger—and thus to punitive damages—it will be excluded.

Opinion 1 will be excluded because it is simply not helpful to the jury.  While it is likely true that this tragic drowning was preventable, nothing about this opinion will help the jury to decide an issue in this case.  This opinion will therefore be excluded.

Dr. Fletemeyer's Opinions 2 and 6 will be excluded.  In Opinion 2, Dr. Fletemeyer intends to testify that the pool's nylon support strap was the "proximate cause" of E.M.J.'s death.  Similarly, in Opinion 6, Dr. Fletemeyer intends to testify that the inclusion of the nylon support strap in the pool's design renders the design defective.  Dr. Fletemeyer is an expert in drowning, not pool design or human factors.  He has no expertise that permits him to form opinions regarding the design of the pool or the ability of E.M.J. to enter the pool via the nylon support strap.

Additionally, Opinion 6 can also be excluded because it is unnecessarily cumulative.  *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . needlessly presenting cumulative evidence.")  Ms. Shibata, an engineering and product safety expert, intends to testify regarding the pool's design and the nylon support strap and its potential as a foothold.  Having Dr. Fletemeyer provide essentially the same testimony would be unnecessarily cumulative, especially given that he lacks the necessary expertise to render such an opinion.  For these reasons, the Court will grant Bestway USA's motion as to Dr. Fletemeyer's Opinions 2 and 6.

Opinions 3 and 5 are essentially the same opinions and will both be excluded because they are outside of the realm of Dr. Fletemeyer's expertise.  In them, Dr. Fletemeyer has concluded that the pool's nylon support strap acted as a foothold by which E.M.J. was able to access the pool, and that this was the only way E.M.J. could have accessed the pool while the ladder was removed.  As already stated, Dr. Fletemeyer does not have any special training or experience related to accident reconstruction or human factors that would permit him to arrive at this conclusion.  It appears that Dr. Fletemeyer arrived at these conclusions by simple inference based on the Warren County Sheriff's Report and Mr. Justice's deposition testimony.  Such testimony will not be helpful to the jury because the jury could also make the same inference when confronted with the Report and Mr. Justice's testimony.  Because Dr. Fletemeyer is not qualified to testify regarding what constitutes a foothold in this case or whether E.M.J. was physically capable of climbing the pool wall, he will not be permitted to offer this testimony at trial.

Opinion 4 will be excluded because it is not an opinion but is instead a statement of facts that can be established by other means.  Again, what is contained the Warren County Sheriff's Report and the opinion of Detective Doerr is not a matter for opinion testimony.  For this reason, Dr. Fletemeyer's Opinion 4 will be excluded.

Opinion 9 will be excluded for two separate reasons.  First, like Opinion 4, the first sentence of Opinion 9 regarding what Mr. Justice testified to will be excluded because it is simply a statement of fact that requires no expert opinion.  Second, whether Mr. Justice believed the pool was safe after removing the pool's ladder is not relevant to the remaining issue in this case.  Only two of Plaintiffs' claims remain against Bestway

32

USA: strict liability design defect and strict liability failure to warn.  Mr. Justice's
subjective belief regarding the pool's safety after he removed the ladder is not relevant to
either of these claims and will not help the jury to decide any remaining issues.  For these
reasons, the Court will exclude Dr. Fletemeyer from testifying to his Opinion 9.

Plaintiffs have established by the preponderance of the evidence the relevance and
reliability of Dr. Fletemeyer's Opinion 8, so the Court will deny Bestway USA's Motion
as to this opinion.  Dr. Fletemeyer is qualified through his extensive experience to testify
regarding drowning events and the physiological process of drowning.  Dr. Fletemeyer
arrived at his conclusion through analysis of the drowning event and by consulting his
previous, extensive study of the drowning process, a field in which he has published
extensively.  This opinion is well within Dr. Fletemeyer's expertise and will help the jury
to assess potential damages.

The Court will therefore permit Dr. Fletemeyer to testify to Opinion 8, but it will
exclude Dr. Fletemeyer's testimony as to all other opinions expressed in his expert report
for the reasons outlined above.

## Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Bestway USA's motion to exclude the expert report, testimony, and opinions of Dianna Sullivan is **DENIED**, as qualified herein.  ECF No. 115.

**IT IS FURTHER ORDERED** that Defendant Bestway USA's motion to exclude the expert report, testimony, and opinions of Peggy Shibata is **GRANTED in part** and **DENIED in part**.  ECF No. 116.  Ms. Shibata's Opinions 1, 2, 3, 10, 11, 12, 14, and 15, as expressed in her expert report, will be excluded.  Ms. Shibata will be permitted to testify to her Opinions 4, 5, 6, and 13.

**IT IS FURTHER ORDERED** that Defendant Bestway USA's motion to exclude the expert report, testimony, and opinions of Dr. John Fletemeyer, PhD, will be **GRANTED in part** and **DENIED in part**.  ECF No. 117.  Dr. Fletemeyer's Opinions 1, 2, 3, 4, 5, 6, 7, and 9, as expressed in his expert report, will be excluded.  Dr. Fletemeyer will be permitted to testify to his Opinion 8.

Dated this 30th day of December, 2024.

_Audrey G. Fleissig_
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE