# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| KYLE JUSTICE and ANNALEAH JUSTICE, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | No. 4:22-cv-00050-AGF |
| BESTWAY (USA), INC., and RURAL KING HOLDINGS, LLP, | ) ) ) ) | |
| Defendants, | ) ) ) | |
| and | ) ) | |
| BESTWAY (USA), INC., | ) ) ) | |
| Third-Party Plaintiff, | ) ) ) | |
| v. | ) ) | |
| MARY FLAKE and PATRICK FLAKE, | ) ) ) | |
| Third-Party Defendants, | ) ) ) | |
| and | ) ) | |
| RURAL KING HOLDINGS, LLP, | ) ) ) | |
| Cross Claimant, | ) ) ) | |
| v. | ) ) | |
| MARY FLAKE and PATRICK FLAKE, | ) ) ) | |
| Cross Defendants, | ) ) ) | |
| and | ) ) | |

| | |
|---|---|
| RURAL KING HOLDINGS, LLP, | ) |
| | ) |
|     Third-Party Plaintiff, | ) |
| | ) |
|   v. | ) |
| | ) |
| BESTWAY (HONG KONG) | ) |
| INTERNATIONAL LIMITED and | ) |
| BESTWAY INFLATABLES & | ) |
| MATERIALS CORPORATION, | ) |
| | ) |
|     Third-Party Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Third-party Defendants Bestway (Hong Kong) International Limited's and Bestway Inflatables & Materials Corporation's (collectively, the "Bestway Entities") Motion to Exclude the expert reports, testimony, and opinions of Dr. Kevin A. Rider, PhD.  ECF No. 119.  Dr. Rider was designated as an expert witness by Third-party Defendants Mary and Patrick Flake.  The Flakes filed a response (ECF No. 131), and the Bestway Entities filed a reply (ECF No. 145).  This matter is now fully briefed and ripe for disposition.  For the reasons set forth below, the Court will grant in part and deny in part the Bestway Entities' Motion.

## Background

This case involves claims raised by Plaintiffs Kyle and Annaleah Justice against Defendants Bestway USA and Rural King Holdings, Inc. under the Missouri Wrongful Death Statute, Mo. Rev. Stat. § 537.080.  Plaintiffs' claims arise from the drowning death of their minor daughter, E.M.J., in an above-ground pool on August 3, 2019.  Plaintiffs

2

filed their Complaint against Bestway USA and Rural King on January 18, 2022. ECF No. 5.

On March 10, 2022, Bestway USA filed a Third-party Complaint against Third-party Defendants, Mary and Patrick Flake, E.M.J.'s grandparents and the owners of the pool in which E.M.J. drowned. Bestway USA raises two claims against the Flakes: Count I for Premises Liability and Count II for Negligence. ECF No. 10.

On August 25, 2023, Defendant Rural King filed a Third-party Complaint raising four total claims against the Bestway Entities: Count I – Negligence against Bestway Hong Kong; Count II – Negligence against Bestway Inflatable and Materials Corporation; Count III – Strict Liability against Bestway Hong Kong; and Count IV – Strict Liability against Bestway I&M. ECF No. 76.

Dr. Kevin Rider, PhD, is a human factors and engineering expert retained by Third-party Plaintiffs Mary and Patrick Flake. ECF No. 119-1 at 2. He was retained "to determine if the subject pool was safe for its intended use, particularly as it relates to other expert opinions that have been provided regarding the same." *Id.* Dr. Rider holds a PhD in industrial and operations engineering from the University of Michigan and master's and bachelor's degrees in industrial engineering from the University of Tennessee. *Id.* He has nearly thirty (30) years of experience in the fields of engineering and human factors. He intends to offer the following opinions:

1. The Flakes and Justices complied with the warning of which they were aware – the ladder had been removed from the pool.

3

2. Based on [E.M.J.]'s demonstrated climbing abilities, the removal of the ladder should have provided an effective guard, which would have prevented this incident from occurring.

3. The published literature is consistent with the conclusion of Detective Doerr and others regarding how this incident occurred.

4. The nylon strap effectively created a wall that was approximately 37" high, 11 inches shorter than the 48" barrier requirement, defeating the performance criteria intended by standards.

5. The effective height of the subject pool wall failed to provide the safety intended by relevant standards and created an unreasonable risk of harm to toddlers, such as [E.M.J.].

*Id.* at 9.

The Bestway Entities argue that Dr. Rider's opinions should be excluded because they are not based on sufficient facts and data, are not the result of a reliable application of a methodology to the facts, and are speculative and unhelpful to the jury. Specifically, the Bestway Entities contend that Dr. Rider did not perform any of his own data collection or analysis, but rather accepted information and data provided to him by other experts in the case and opined on whether these other experts' conclusions fit that data. The Bestway Entities argue that Dr. Rider's failure to obtain data independently and to conduct his own testing render his conclusions inadmissible. The Bestway Entities rely on Missouri case law[1] on the admissibility of expert opinion, but do not explain why this case law is applicable in this Court, which is governed by the Federal Rules of Evidence.

---

[1] At one point in their brief, the Bestway Entities even describe a Missouri Court of Appeals case as an opinion from this Court. ECF No. 119 at 9 (citing to *Hargan v. Sears, Roebuck and Co.*, 787 S.W.2d 766, 768 (Mo. Ct. App. 1990), but inaccurately representing it as a coming from E.D. Mo.). This case, like the other cited opinions from Missouri courts regarding Missouri rules of evidence, is inapplicable here.

4

As to their argument that Dr. Rider did not reliably apply a methodology to the facts, the Bestway Entities present several related arguments.  First, the Bestway Entities assert that Dr. Rider failed to account for Mary Flake's past experience babysitting and raising children in forming his conclusions about what dangers she was aware of regarding the pool.  Second, the Bestway Entities also question the reliability of Dr. Rider's opinion regarding what warnings the Flakes and the Justices were aware of given their testimony that they never read the pool's warnings.  Third, the Bestway Entities contend that Dr. Rider improperly relied on studies about the climbing abilities of three-year-old children rather than crediting results from those studies regarding two-year-old children.  The Bestway Entities argue that because E.M.J. was two at the time of her death, Dr. Rider cannot reliably compare her alleged abilities to those of three-year-olds included on such studies.

The Bestway Entities arguments that Dr. Rider's testimony will not be helpful to the jury are a repeat of their previous arguments.  They contend that Dr. Rider's opinions "should be excluded because they are so fundamentally unsupported that they can offer no assistance to the jury."  ECF No. 119 at 14.  The Bestway Entities then argue that Dr. Rider is not qualified to testify regarding industry design standards and therefore should be precluded from offering any opinions on those issues.

The Flakes provide a brief response to each of the Bestway Entities' arguments.  First, the Flakes argue that the issue of whether Dr. Rider's conclusions are supported by sufficient facts or data is one of weight and not admissibility.  The Flakes emphasize that

5

Dr. Rider's is not required to rely exclusively on data and information he personally gathered, and instead he must only rely on sufficient, competent evidence.

Second, the Flakes argue that Dr. Rider's opinions are the result of a reliable application of a human factors methodology to the facts of this case.  They state, without citation to the record, that he relied on peer-reviewed articles and published literature in the field of human factors analysis in forming his conclusions.  The Flakes then state that Dr. Rider's testimony should be admitted because it is relevant.

Third, the Flakes argue that Dr. Rider's opinions will be helpful to the jury because "his expertise and insight into human behavior . . . are beyond the comprehension of a layperson."  ECF No. 131 at 7.  The Flakes explain that Dr. Rider's testimony will help the jury to understand why the Flakes and the Justices acted as they did.

The Bestway Entities' reply briefly repeats the arguments from the Motion and points out that the Flakes failed to respond to some of these arguments, particularly regarding Dr. Rider's reliance on study results for three-year-olds rather than two-year-olds' abilities to climb various barriers.

**Legal Standard**

The admission of expert testimony in this Court is governed by Federal Rule of Evidence 702, which provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

The rule was amended in 2000 in response to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, which charged trial judges with a "gatekeeping" role to screen expert testimony for relevance and reliability. 509 U.S. 579, 590–93 (1993); *see also Russell v. Whirlpool Corp.*, 702 F.3d 450, 456 (8th Cir. 2012). "To satisfy the relevance requirement, the proponent must show that the expert's reasoning or methodology was applied properly to the facts at issue." *Barrett v. Rhodia, Inc.*, 606 F.3d 975, 980 (8th Cir. 2010) (citation omitted). "To satisfy the reliability requirement, the party offering the expert testimony 'must show by a preponderance of the evidence both that the expert is qualified to render the opinion and that the methodology underlying his conclusions is scientifically valid.'" *Id.* (quoting *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006)); *see also In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (3d Cir. 1994) ("[A]n expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable.") (citing *Daubert*, 509 U.S. at 589).

7

In the most recent amendment to Rule 702, made effective on December 1, 2023,[2] the advisory committee's note clarifies the Court's initial gatekeeping function and emphasizes that proponents of expert testimony must establish admissibility of the proffered evidence by a preponderance of the evidence.  Fed. R. Evid. 702 advisory committee's note to 2023 amendment; *see also Word v. Mine Safety Appliances Co.*, No. 5:14-CV-00445-BRW, 2016 WL 3034045, at *2 (E.D. Ark. Mar. 25, 2016) (stating "[w]hen a party proffers an expert witness, deciding whether Rule 702 is satisfied is a preliminary issue governed by Federal Rule of Evidence 104(a)[, which] requires the proponent of evidence to establish its admissibility by a preponderance of the evidence."); *United States v. Martinez*, 3 F.3d 1191, 1196 (8th Cir. 1993) ("Before admitting scientific expert testimony, the court must conclude, pursuant to Federal Rule of Evidence 104(a) that the proposed testimony constitutes (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue.") (citing *Daubert*, 509 U.S. at 592) (footnote omitted).  "The preponderance standard ensures that before admitting evidence, the court will have found it more likely than not that the technical issues and policy concerns addressed by the Federal Rules of Evidence have been afforded due consideration." *Bourjaily v. United States*, 483 U.S. 171, 175 (1987).  The advisory committee's note also states that "many courts have held that the critical questions of the sufficiency of an expert's basis, and the application of the expert's

---

[2]   The advisory committee's note clarifies that this amendment does not impose any new, specific procedures, but instead "is simply intended to clarify that Rule 104(a)'s requirement applies to expert opinions under Rule 702." Fed. R. Evid. 702 advisory committee's note to 2023 amendment.

8

methodology, are questions of weight and not admissibility.  These rulings are an incorrect application of Rules 702 and 104(a)."  Fed. R. Evid. 702 advisory committee's note to 2023 amendment.

"The inquiry envisioned by Rule 702 is a flexible one," designed to exclude "vague theorizing based on general principles" or "unsupported speculation," but not requiring an opinion to be "a scientific absolute in order to be admissible."  *Adams v. Toyota Motor Corp.*, 867 F.3d 903, 914–16 (8th Cir. 2017) (cleaned up); *see also Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141–42 (1999) ("[T]he test of reliability is 'flexible,' and *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case.  Rather, the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability opinion."); *Unrein v. Timesavers, Inc.*, 394 F.3d 1008, 1011 (8th Cir. 2005) (stating that the "evidentiary inquiry is meant to be flexible and fact specific, and a court should use, adapt, or reject *Daubert* factors as the particular case demands.") (citation omitted).  Further, Rule 702(d) has been amended to emphasize that the reliability analysis applies to each opinion offered.  Fed. R. Evid. 702 advisory committee's note to 2023 amendment.

**Discussion**

The preponderance of the evidence supports the admissibility of most, but not all, of Dr. Rider's opinions.  Dr. Rider is qualified to offer expert testimony regarding human factors and engineering, and he offers opinions relating to those fields of expertise.  The preponderance of the evidence shows that he has relied on sufficient facts and data and

9

has reliably applied a human factors methodology to those facts and data in forming his Opinions 1, 2, 4, and 5.  The Court finds that these opinions are relevant and will be helpful to the jury.  But the preponderance of the evidence does not support the admissibility of Dr. Rider's Opinion 3.

Dr. Rider's Opinion 1 regarding the Flakes and the Justices' actions regarding removing the ladder from the pool and their understanding of the ladder's danger is admissible.  While the Bestway Entities argue that Dr. Rider cannot have reliably arrived at this opinion because the Flakes and Justices testified that they did not read the pool's included warnings, this opinion does not require that the Flakes or the Justices read those warnings.  The Flakes and the Justices testified that they knew that leaving the ladder on the pool would create a danger to the children, and they made sure to remove the pool ladder when the pool was not in use.  Dr. Rider will therefore not be permitted to reference the Flakes' or the Justices' review and understanding of the pool's included warnings, but, as a human factors expert, Dr. Rider is qualified to testify to the Flakes' and Justices' understanding of the danger presented by the pool and its ladder.

The Bestway Entities misrepresent Dr. Rider's testimony when they argue that he failed to consider Mrs. Flake's experience with babysitting.  Dr. Rider, in response to a question regarding Mrs. Flake's background as a babysitter for local families, testified that he recalled her testimony generally but did not recall specifics regarding her babysitting experiences.  ECF No. 119-2 at 111:10–24.  Dr. Rider then testified that he does not have an opinion on whether Mrs. Flake's background as a babysitter would have made her more aware of potential dangers of leaving a toddler unsupervised.  *Id.* at

10

111:25–113:1. The Bestway Entities argue that Dr. Rider could not have properly formed an opinion based on sufficient facts and data when he ignored this testimony from Mrs. Flake. But the fact remains that Dr. Rider based his opinion on sufficient facts and data, and the Bestway Entities are free to cross-examine Dr. Rider regarding testimony that they believe conflicts with his conclusions.

Dr. Rider's Opinion 2—that removing the pool's ladder should have rendered the pool safe given E.M.J.'s known climbing abilities—is admissible. Again, this opinion is within Dr. Rider's area of expertise, and he relied on sufficient facts and data when forming this opinion. The fact that Dr. Rider himself did not conduct any studies or his own observations does not render Opinion 2 unreliable or inadmissible. The Bestway Entities have cited no caselaw from this Circuit or any federal court that supports excluding Dr. Rider's testimony simply because he did not conduct independent testing or personally observe the scene of the drowning. In fact, experts are not required to conduct independent testing nor are they required to conduct direct observations of the scene to offer opinions. *See Klingenberg v. Vulcan Ladder USA, LLC*, 936 F.3d 824, 829 (8th Cir. 2019) (rejecting argument that expert's testimony should have been excluded because expert failed to "test his theories on the damaged [product] or an exemplar model.") (citing *Shuck v. CNH Am., LLC*, 498 F.3d 868, 875 (8th Cir. 2007) (rejecting the same)). Under Federal Rule of Evidence 703, "[a]n expert may base an opinion on facts or data in the case that the expert *has been made aware of* or personally observed." (emphasis added). Dr. Rider has been made aware of facts of this case through the testimony of witnesses and expert reports, which he personally reviewed. He then

11

analyzed those facts and data to come to his conclusions. The Bestway Entities have not shown that this information is not the type generally relied upon by human factors experts. The Court finds no reason to exclude Dr. Rider's testimony simply because he did not conduct his own studies or personally observe the scene, and Dr. Rider will therefore be permitted to testify to his Opinion 2.

Dr. Rider's Opinions 4 and 5 are admissible for many of the same reasons already discussed. The Bestway Entities suggest that Dr. Rider cannot provide these opinions because he testified that he is not an expert in certain applicable standards for above-ground pools, but they again misrepresent Dr. Rider's testimony. He testified that he is not an expert on the specific standards "in their entirety," but rather that he is an expert on them "[a]s it relates to human factors." ECF No. 119-2 at 174:20–21. He will be permitted to testify regarding his understanding of these industry standards as it relates to human factors and engineering in Opinions 4 and 5. These opinions will also be helpful to the jury as they are outside of the knowledge or experience of the average lay juror and will help the jury to determine the potential fault to attribute to the Flakes and/or the Bestway Entities.

Dr. Rider's Opinion 3, however, is inadmissible because it reflects an unreliable application of the data to the facts of this case. To arrive at the conclusion that the published literature regarding children's climbing abilities is consistent with Detective Doerr's conclusions about how E.M.J. entered the pool Dr. Rider must make too great an analytical leap between the data he cites and the facts of this case.

12

To arrive at Opinion 3, Dr. Rider relies on several studies regarding the climbing abilities of children. In one of these studies, 52% of three-year-old participants were able to climb a three-foot barrier while 22% of them were able to climb a four-foot barrier. ECF No. 119-1 at 5. Dr. Rider admits that E.M.J. was approximately thirty-one and a half (31.5) months old at the time of her death and was between thirty-five inches (35") and thirty-six- and one-half inches (36.5") tall. Dr. Rider then states that twenty-four (24) month old children are, on average, thirty-three- and three-quarters inches (33.75") tall. Dr. Rider then cites to another study that found that 13% of toddlers ranging from twenty-four (24) to thirty-six (36) months old were able to climb a four-foot chain link fence. He then concludes that this literature is consistent with Detective Doerr's conclusions that E.M.J. was able to enter the pool by climbing the pool's wall using the nylon support strap as a foothold. *Id.* at 5–6.

Dr. Rider does not sufficiently explain why study data regarding three-year-old participants' climbing abilities is relevant here when E.M.J. was just over two-and-a-half years old. Dr. Rider references E.M.J.'s height and asserts that "she's closer to three and taller than average [height] of a 24 month old . . . ." ECF No. 119-2 at 159:7–8. He admits that study participants that were around the same age as E.M.J. or even one month shy of three-years old would have been counted in the two-year old data set in the study. *Id.* at 156:20–157:20. His only explanation for why he's not considering the two-year old's data set is E.M.J.'s height, but he also admits that E.M.J. was one inch (1") shorter than an average three-year old. *Id.* at 165:14–166:17. While Dr. Rider factors in E.M.J.'s height, he fails to account for potential developmental and motor differences

13

between two and three-year olds.  Neither Dr. Rider nor the Flakes have presented any evidence that height was a measured variable in the study he relies on or that the study's conclusions relied upon the participants' heights rather than their age.  Dr. Rider also fails to explain why data regarding twenty-four (24) to thirty-six (36) month old's ability to climb a four-foot chain link fence is applicable to this case, which does not involve a chain-link fence but instead involves a solid barrier.  Given these gaps between the data Dr. Rider relies upon and the facts in this case, the Court finds that the analytical leap necessary for Dr. Rider to arrive at his Opinion 3 is too great and will be excluded.  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.") (citation omitted).

    Dr. Rider's Opinions 1, 2, 4, and 5, expect as noted herein, are based on sufficient facts and data, are reliable, are within Dr. Rider's areas of expertise, and will help the jury to decide outstanding issues in this case.  But Dr. Rider's Opinion 3 reflects an unreliable application of a human factors methodology to the facts of this case, and it will therefore be excluded.  The Court will thus grant in part and deny in part the Bestway Entities' Motion to Exclude Dr. Rider's opinions, report, and testimony.

**Conclusion**

Accordingly,

**IT IS HEREBY ORDERED** that Bestway (Hong Kong) International Limited's and Bestway Inflatables & Materials Corporation's Motion to Exclude the expert reports, testimony, and opinions of Dr. Kevin A. Rider, PhD, is **GRANTED in part** and **DENIED in part**.  ECF No. 119.  Dr. Rider will be permitted to testify to his Opinions 1, 2, 4, and 5, subject to the limitations discussed above.  Dr. Rider's Opinion 3 will be excluded.

Dated this 30th day of December, 2024.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE